Argued November 27, 1972, affirmed January 12, 1973

BOYD, *Respondent, v.* FRANCIS
FORD, INC. (No. 32-769), *Appellant.*
504 P2d 1387

*William L. Hallmark,* Portland, argued the cause for appellant. With him on the briefs were McMenamin, Jones, Joseph & Lang, Portland.

*Raymond Conboy,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison and Dan O'Leary, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

This is a workmen's compensation case. The question presented is whether death resulting from an accident arose "* * * out of and in the course of employment * * *." ORS 656.002 (6); 656.202 (1).

Employer's carrier denied the wife's claim. Denial was sustained by the hearing officer, and rejected by the Workmen's Compensation Board and the circuit court.

Decedent was a salesman for Francis Ford, Inc., which supplied him with a pickup demonstrator in which he carried business papers, and which he took

home at night. In normal business he went anywhere at anytime soliciting sales.

On the night of his death decedent met two prospective purchasers, Erickson and Biddle, at a bar-restaurant named Barbur Towers. He inspected their vehicles and talked with them about sales at this location from 7 to about 8:30 p.m. His wife came to the same location and waited for him in the bar while he talked to prospects Erickson and Biddle in the restaurant. She waited until about 10 p.m. when, she said, decedent came into the bar with two other, unidentified men with whom he had apparently been talking business. These two men left, claimant and decedent had one—and possibly several—drinks and left in separate vehicles, he in the pickup, to go to the High Hat Restaurant to eat. When claimant did not find the pickup at the High Hat she proceeded on toward their home and enroute came upon the scene of the one-car accident involving the pickup in which decedent was killed.

A test taken shortly after the accident showed decedent's blood to contain .37 per cent alcohol. Biddle and Erickson testified decedent had appeared sober and had drunk only coffee in their presence. Claimant said he appeared normal when she saw him and he could not drink a lot without showing it. Expert evidence was that the blood-alcohol level was near what is lethal, and also that a person who could achieve such a level would have had considerable experience with alcohol, would have been drinking for quite a few hours before achieving it, and might not outwardly show the effects of the alcohol.

The hearing officer understandingly doubted the credibility of claimant, Erickson and Biddle. Never-

theless, for reasons that follow, if decedent was drinking heavily with these people, in this case it is doubtful whether that fact would negative coverage.

■ Decedent's employment was of such nature that he would normally be covered by workmen's compensation going to and coming from work. *Fenn v. Parker Construction Co.*, 6 Or App 412, 487 P2d 894 (1971); *King v. Ind. Acc. Com.*, 211 Or 40, 309 P2d 159, 315 P2d 148, 318 P2d 272 (1957); *Reynolds v. State Ind. Acc. Com.*, 141 Or 197, 16 P2d 1105 (1932); 1 Larson, Workmen's Compensation Law 270, § 16.30 (Supp 1972).

The only reason he would not be covered is one revolving around his allowing personal activities to intervene and substantially increase the risks of his homeward journey.

Larson presents the reasoning for denial:

"* * * [T]he fact that the employee frequently is indeed free to go where he pleases and do what he pleases after the last business chore is completed gives rise to a class of exasperating, complicated and sometimes picturesque fact problems involving employees who, had they gone straight home, would have been entitled to have their homeward journey covered, but who interpolated so many personal diversions between the last business act and the journey home that the ultimate journey home has often been held to have lost its business character somewhere along the line * * *.

"This kind of case does not generate a set of clear and profound workmen's compensation principles to cover the situation. One thing seems reasonably certain. An employee who has the right to have his homeward journey covered cannot, so to speak, put that right in the bank indefinitely and cash it at whatever future time suits his con-

venience. The sheer amount of time elapsed is bound to influence courts in these cases. * * * Other factors in addition to time that might influence the result would include the amount of risk added by the personal activities, *such as drinking,* the nature of the job, and the extent to which there may be found an identifiable moment in time at which the work duties end and the clock begins to run on the deviation." (Emphasis supplied.) 1 Larson, Workmen's Compensation Law 294.69-294.71, § 19.29 (1972).

■ Generally speaking mere delay in commencing the homeward journey is not enough to remove the employe from coverage absent a showing that the delay increased the risk of the homeward journey. *Cf. Matter of Lowery v. Riss & Co.,* 10 App Div 2d 489, 200 NYS2d 679 (1960); *Matter of Cliff v. Dover Motors,* 11 App Div 2d 883, 202 NYS2d 914 (1960), *aff'd* 9 NY2d 891, 216 NYS2d 703, 175 NE2d 831 (1961).

Where the employe stops along the homeward path for drinks and makes unexplained side trips and no clear progress toward home is made, coverage is generally denied. *Matter of Pasquel v. Coverly,* 4 NY2d 28, 171 NYS2d 848, 148 NE2d 899 (1958); *Matter of Owen v. Oneida Ltd.,* 16 App Div2d 1005, 229 NYS2d 325 (1962); *Matter of Robinson v. Village of Greenport,* 27 App Div 2d 599, 275 NYS2d 885 (1966).

The problem with applying the above principles to this case is that it is unclear just what Boyd was doing from the time his two known customers left around 8:30 p.m. until he started toward home sometime shortly after 10 p.m. The fact that he was supposedly planning to stop along the route home is of little relevance because he in fact did not stop and

even if he had it would be necessary to show that this further delay increased the risk of the eventual homeward journey.

The employer wants us to accept the inference that Boyd spent the time between 8:30 and 10 p.m. drinking heavily. This is based on the testimony of Mr. Erickson and Mr. Biddle that up until the time they left Boyd was sober and not drinking, coupled with his blood-alcohol level being .37 per cent two hours later. If this were undeniably so, Boyd's personal activity increased the risks of his homeward journey greatly beyond what they normally would have been and coverage should be denied.

However, the facts are unclear as to what Boyd actually was doing. First, there is the question of whether Boyd was engaged in further business transactions with the two unidentified men. Second, there is the testimony of the expert to the effect that only an experienced alcoholic could achieve a blood-alcohol level of .37, necessarily over a longer period of time, and such a person could deceive the casual observer as to his inebriated condition.

There is little substantial evidence to support a finding that the personal activities (if they existed) contributed substantially to the cause of the accident.

The evidence of Boyd's activities between 8:30 and 10 p.m. is inconclusive. He did have a business meeting at Barbur Towers and he was killed on the way home approximately two hours later.

■ The fact alone that he had been drinking before the accident, which is a question of Boyd's negligence, is not enough to remove him from coverage. It is only in showing that he may have spent consider-

able time doing nothing but drinking that his blood-alcohol level is relevant to this case. That was not shown.

Affirmed.