Argued March 27, affirmed April 15, petition for reconsideration
denied May 22, petition for review denied June 18, 1974

FOWERS, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 13,038-L), *Appellant.*

521 P2d 363

*Jim G. Russell,* Assistant Attorney General, Salem,
argued the cause for appellant. With him on the brief

were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*D. S. Denning, Jr.,* Vale, argued the cause for respondent. With him on the brief were Schroeder, Denning & Hutchens, Vale.

Before SCHWAB, Chief Judge, and THORNTON and TANZER, Judges.

SCHWAB, C. J.

The sole question raised on this workmen's compensation appeal is whether death resulting from an accident arose "* * * out of and in the course of employment * * *." ORS 656.002 (6); 656.202 (1). The State Accident Insurance Fund denied the claim. The hearing officer, Workmen's Compensation Board and circuit court all in turn allowed the claim. In setting forth the facts we borrow in large part from the briefs of the parties, both of which are examples of careful craftsmanship.

The deceased was the general manager of the Vale Consumers Co-op., headquartered in Vale. His duties involved working out of the office as much as within the office and required him to travel through the co-op trade area. Business trips to Ontario, Oregon, were not unusual. He was authorized to use his own vehicle for business purposes and was reimbursed for such use by his employer. As general manager he had no set hours of work, and although he was usually expected to work from 8 a.m. to 5 p.m., he routinely worked 10 to 12 hours per day. Although his direct employers, the board of directors of the co-op, did not condone drinking of intoxicants on the job, they assumed and expected that the nature of his work

was such that on occasion he would do business over drinks. In short, the deceased was given and expected to exercise the latitude normally exercised by the general manager of a substantial venture.

On August 5, 1971, the day of the accident, the deceased came to his office in Vale and told his assistant that he was driving west to visit with a specific customer. His plans for the afternoon were unknown. At about 11 a.m. he called his wife on the telephone and told her that he had some business to transact, but would be home early if he got through in time. She interpreted this to mean around 5 or 5:30 p.m. as against 7 p.m., which was the time he normally returned home when he worked a full day.

At about 1 p.m. the deceased entered a barber shop in Ontario where in addition to getting his hair cut he discussed specific co-op business of his employer with the barber who was also a farmer. There is no evidence that the deceased was intoxicated at this time. Some time close to 2 p.m. the deceased went to a restaurant in Ontario where he had some food and also some alcoholic drinks. He left the restaurant about 4 p.m. In the opinion of some witnesses he was definitely intoxicated; others were not certain. In any event, shortly after 4 p.m., while on a direct route from Ontario to his home in Vale, he was killed in an accident. Investigation disclosed that at that time his blood alcohol content was .18 percent. The issue in this case is whether prior to the accident the deceased had abandoned his employment, both by virtue of a deliberate intent to do so and by virtue of his intoxication at the time of the accident. We dealt with this issue in *Boyd v. Francis Ford, Inc.,* 12 Or App 26, 504 P2d 1387 (1973), and no purpose would be served

by again setting forth all of the authorities contained therein, except to reiterate:

> " 'This kind of case does not generate a set of clear and profound workmen's compensation principles to cover the situation. One thing seems reasonably certain. An employee who has the right to have his homeward journey covered cannot, so to speak, put that right in the bank indefinitely and cash it at whatever future time suits his convenience. The sheer amount of time elapsed is bound to influence courts in these cases. * * * Other factors in addition to time that might influence the result would include the amount of risk added by the personal activities, *such as drinking, the nature of the job,* and the extent to which there may be found an identifiable moment in time at which the work duties end and the clock begins to run on the deviation.' (Emphasis supplied.) 1 Larson, Workmen's Compensation Law 294.69-294.71, § 19.29 (1972)." 12 Or App at 29-30.

The record does not demonstrate that deceased engaged in any business purpose during the two hours which elapsed between the time he left the barber shop and the time he started for Vale. If the deceased had been an employe with specific, well-defined duties and without the latitude of a general manager, we might well hold that under the circumstances in this case there had been such an abandonment as to defeat coverage, but that is not the case here. We agree with the three previous triers of fact that deceased's death arose out of and in the scope and course of his employment.

Affirmed.