Argued July 16, affirmed August 12, reconsideration denied
September 18, petition for review denied November 1, 1974

SEIDL ET AL, *Appellants, v.*
DICK NILES, INC., *Respondent.*

525 P2d 198

*John Henry Hingson, III,* Oregon City; argued the
cause for appellants. With him on the brief were
Misko, Njust & Hingson, Oregon City.

*Thomas Cavanaugh,* Portland, argued the cause for
respondent. With him on the brief were Schouboe,
Cavanaugh & Dawson, Portland.

Before SCHWAB, Chief Judge, and THORNTON and TANZER, Judges.

## THORNTON, J.

The question presented in this workmen's compensation appeal is whether the workman's death in an automobile accident, which occurred off the employer's premises after normal working hours, arose out of and in the course of employment. ORS 656.002 (6), 656.202 (1). The employer's insurance carrier denied the claim of the widow and minor children of the decedent. The hearing officer allowed the claim. On appeal by the employer the Workmen's Compensation Board reversed the hearing officer and rejected the claim. The claimants appealed to the circuit court which thereafter affirmed the Board's order denying the claim.

Claimants in their appeal to this court make the following assignments:

(1) "The court erred in holding the widow and surviving sons of a workman were not entitled to workmen's compensation benefits where the decedent was killed going home from a special meeting called by and for the benefit of the employer"

(2) "The court erred in not holding the widow of the deceased workman entitled to a lump sum payment of benefits upon her remarriage"

Decedent was employed as a mechanic for Dick Niles, Inc., a Portland automobile dealer. He worked on a commission basis rather than a salary or hourly wage. On the night of his death the deceased had stayed after work in order to attend and participate in an after-hours' company meeting at the employer's place of business. The evidence was that periodically

the employer would schedule an evening meeting for the purpose of showing training films or tapes and ironing out various problems concerning internal operations. The business session was always followed by a social hour which allowed for an additional amount of employer-employe fellowship and shop talk. On these occasions the employer furnished free food, which was served before the first part of the meeting commenced, and free beer, which was made available to the employes during the social half of the meeting.

Although the employes were not required to attend the meetings, they felt a certain obligation to do so.

A meeting was called for the evening of January 12, 1972, by the employer. Decedent had told his wife not to expect him home for dinner that night. He punched the time clock that morning at 7:36 a.m. He worked all day and punched out at 4:38 p.m. Immediately thereafter decedent and five other company mechanics went across the street to a cocktail lounge where they commenced enjoying several mixed drinks.

Meanwhile the company meeting began with the serving of food at approximately 6 p.m. The owner of the employer corporation, its controller, the shop manager, parts manager, shop foreman, and a group of the employes, were present. At about 6:25 p.m. the regular business got under way with a few words from Mr. Niles and other company officers, followed by the showing of a training tape. The six mechanics did not arrive at the meeting until some time later, and were somewhat boisterous. When they arrived the last portion of the service tape was being shown, or had just been completed. (There was a conflict in the evidence on this point.) The meeting was then opened

for general discussion. The decedent took part in this discussion. Following this, beer was made available and the social portion of the evening commenced. The social portion of the meeting ended about 7:30 p.m. Some of the men left; others stayed at the premises and played cards until about 11 p.m.

The decedent and several of the mechanics, including Fred Larson and Larry Fogarty, who had met at the cocktail lounge earlier, left the company premises about 8:30 p.m. and went across the street to a private parking lot where the decedent and Fogarty had parked their vehicles. (The employer, Dick Niles, Inc., paid one-half of the monthly parking expenses incurred by all employes.) Larson carried out two bottles of beer which had been provided by the employer. While in the parking lot the men drank the beer and also three-fourths of a fifth of whiskey from a bottle produced from one of the cars, arm-wrestled and talked. At this point the recollection of the two chief witnesses, Larson and Fogarty, as to precisely what followed is unclear. Nevertheless it appears from the record that after staying in the parking lot about an hour drinking and talking, the decedent, Fred Larson and Larry Fogarty left the lot in decedent's van, with decedent at the wheel, and took a short drive around the vicinity with no particular destination in mind. After a brief interval they returned to the parking lot once again. Larson got into the back seat of Fogarty's automobile and laid down while the decedent sat in the passenger side of the front seat. Apparently neither Larson nor the decedent felt like driving at that time. Shortly thereafter, Fogarty offered to drive and the trio decided they would go for a ride in Fogarty's automobile. Again the trio apparently had no particular destination in mind. One

testified that at one point he told the others he wanted to go home. Another thought they were going to an adjacent parking lot to pick up Larson's truck. Moments later, with Fogarty at the wheel, the automobile slammed into a tree only a few blocks from the employer's place of business, resulting in decedent's death. The accident occurred at approximately 10 p.m.

The hearing officer concluded that claimants' decedent was in the course of his employment when the fatal accident occurred; that "* * * the employer * * * had set in motion a chain of events arising out of and directly connected with the employment which so increased the probability of the subsequent happenings * * * as to bring the subsequent activities within the scope of the employment."

The Workmen's Compensation Board reversed, holding that the fatal accident occurred while the three employes "were on a personal frolic which began immediately after their regular shift, was only minimally and temporarily interrupted by their attendance at the employer's business meeting and to which they had returned following the meeting. It was not the employer but the decedent and his fellow employees who set in motion the chain of events which contributed to his death." The trial court upheld the Board's conclusion.

While much space is devoted in both briefs to whether this case does or does not come within the 'going and coming from home' rule, it is doubtful that the rule is really involved here because it is far from clear in the evidence that decedent was actually headed for home when the accident occurred.

Rather, the evidence establishes that the decedent and his companions were more or less aimlessly

cruising the downtown area in the vicinity of their place of employment with no particular destination in mind.

We can find no basis for holding that these three employes were in any way engaged in furthering the employer's business once they left the meeting and commenced their post-meeting activities on the parking lot, and subsequently started cruising the vicinity in their private automobiles.

We conclude that decedent and his co-employes had terminated all work-related activities long prior to commencing the ill-fated automobile ride. The fatal accident did not occur while decedent was in the course and scope of his employment.

If decedent was not en route home, and was still engaged in riding around downtown Portland with two fellow employes when the fatal accident occurred, the claim is not compensable for the reasons already stated.[1] If decedent was in fact en route home at the time of the fatal accident, the claim is not compensable because the 'going and coming' rule applies, and claimants have not brought themselves within any recognized exceptions thereto. *White v. S.I.A.C.,* 236 Or 444, 389 P2d 310 (1964); *Davis v. SAIF,* 15 Or App 405, 515 P2d 1333 (1973). *Cf., Casper v. SAIF,* 13 Or App 464, 511 P2d 451 (1973); *Boyd v. Francis Ford, Inc.,* 12 Or App 26, 504 P2d 1387 (1973); *Fowers v.*

---

[1] *See,* Winter & Hirsch Loan Co. v. Indus. Com., 47 Ill2d 254, 265 NE2d 152 (1970), where a group of employes went on an airplane ride following a lengthy office Christmas party given by the employer where food and drink were provided. The plane, which was owned and piloted by one of the employes, crashed and all but one aboard drowned. The court held that the plane ride was not incidental to the social function and the decedents were on a frolic of their own at the time of their deaths.

*SAIF,* 17 Or App 189, 521 P2d 363, Sup Ct *review denied* (1974).

In view of our determination that the claim was not compensable we do not reach claimants' second assignment of error.

Affirmed.