# SIMONS, *Respondent,*
*v.*
# SWF PLYWOOD COMPANY, *Appellant.*
## (No. 75-1784-E-3, CA 5676)
552 P2d 268

*Keith D. Skelton,* Portland, argued the cause and filed the brief for appellant.

*Alan B. Holmes,* Medford, argued the cause for respondent. With him on the brief were Holmes, James & Clinkinbeard, Medford.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

The sole issue presented in this workmen's compensation appeal is whether the claimant was acting within the course of his employment at the time he was seriously injured in an automobile accident. Former ORS 656.002(7)(a). The hearings referee found that claimant had abandoned his employment prior to the time of the accident and affirmed the employer's denial of benefits. The Workmen's Compensation Board reversed and the circuit court upheld that determination.

On the date of the injury claimant was employed as general manager for Southwest Forest Plywood Company, a subsidiary of Southwest Forest Industries. Claimant's home was in Corvallis. His responsibilities consisted of supervising all Southwest Forest Plywood operations in Oregon, including plant operations in Albany, Grants Pass and White City.

On June 5, 1974, claimant, after attending an executive meeting of the corporation in Albany, drove to Eugene with David Rice, the company's supervisor and his immediate superior, for the purpose of viewing corporate equipment. After the viewing, at approximately 5 p.m., the two men went to the Eugene airport where they each consumed a mixed drink at the airport lounge. They then flew in a company-leased airplane to Medford, accompanied by C. W. Booth and Kyle Gray, who also occupied executive positions in the corporations. In flight claimant drank a second mixed drink and discussed business matters with the other men.

At around 6:30 p.m. the plane arrived at the Medford airport. All of the men, with the exception of Booth who went bowling, proceeded directly to the airport bar.[1] The men consumed mixed drinks and talked

---

[1] The men were also joined by the pilot of the plane, Cliff Buck, who remained with them until the group disbanded.

about business matters and personal matters for several hours until shortly before 11 p.m. The evidence indicates that at least 50 per cent of the conversation pertained to business matters. The only business decision identified by claimant's witnesses was made early in the evening. During this four-hour period the men drank 11 rounds of alcoholic drinks. Most of the bar bill was paid for by Rice, using his credit card. There was testimony that the employer routinely allowed its executive personnel to bill the company for these expenses.

Claimant testified that he had no recollection of what transpired after he arrived at the airport lounge. He did not remember how much alcohol he drank that evening or how he eventually left the lounge. When the party of four did leave the lounge, Gray and the pilot departed together. Rice assisted claimant from the lounge, placed him in the passenger side of a company car,[2] and drove toward Interstate Highway I-5. The evidence indicates that claimant and Rice were intending to drive to Grants Pass. Rice, who lived in Grants Pass, was intending to go to his home, while claimant was intending to spend the night in a Grants Pass motel. Apparently Rice took the wrong ramp and ended up driving in a southerly direction in the northbound lanes on I-5. As a consequence about 10 miles north of Medford their automobile collided head-on with another automobile. Rice and the driver of the northbound vehicle were killed. Claimant was seriously injured.

After a hearing the referee concluded that the claimant "* * * entered on a frolic of his own and reached a level of voluntary intoxication which made him incapable of performing his duties, thereby abandoning his employment." The Board and the circuit court determined that claimant's journey was covered

---

[2]The car was owned by Carolina Pacific Plywood, Inc., a subsidiary of Southwest Forest Industries, the parent corporation.

because he had not grossly deviated from the course of his employment.[3]

■ It is incumbent upon a claimant seeking workmen's compensation benefits to prove by a preponderance of the evidence his entitlement to such benefits under the Workmen's Compensation Law, ORS ch 656. *Davis v. Weyerhaeuser Co.,* 231 Or 596, 373 P2d 985 (1962); *Martin v. SAIF,* 22 Or App 282, 538 P2d 943 (1975); *see also, Rafferty v. SAIF,* 21 Or App 680, 536 P2d 540 (1975).

This court has on several occasions considered whether intoxication of the workman at the time of the accident bars recovery of benefits under our Workmen's Compensation Law. Among those cases are the following:

*Boyd v. Francis Ford, Inc.,* 12 Or App 26, 504 P2d 1387 (1973), involved a car salesman who had been supplied with a demonstrator vehicle which he took home at night, went anywhere at any time soliciting sales. Shortly before his death he had a business meeting at a bar-restaurant. He was killed in a single car accident approximately two hours after this meeting. We held that the salesman's death was compensable and his widow was entitled to workmen's compensation even though the salesman had been drinking prior to the accident and supposedly had planned to stop at another restaurant on the way home.

In *Fowers v. SAIF,* 17 Or App 189, 521 P2d 363, Sup Ct *review denied* (1974), we held that even though there was no evidence that the decedent, the general manager of a consumer co-op, engaged in any business purposes during two hours which elapsed between the time he left a barber shop and the time he started for his home, and even though investigation of the fatal automobile accident disclosed that at the time his

---

[3]Employer concedes that the nature of claimant's employment was such that he would normally be covered by workmen's compensation on his journeys to and from work activity.

blood alcohol content was .18 per cent, decedent's death arose out of and in the course of his employment.

In *Seidl v. Dick Niles, Inc.,* 18 Or App 332, 525 P2d 198, Sup Ct *review denied* (1974), the deceased workman and other employes began drinking after work. Later they attended a company meeting at the employer's place of business where they began drinking beer, furnished by the employer. Subsequently thereafter they continued drinking in a nearby parking lot. Later decedent was involved in a fatal automobile accident while cruising around the downtown area with fellow employes. We held that the decedent's death did not occur while the decedent was in the course and scope of his employment.

More recently in *O'Connell v. SAIF,* 19 Or App 735, 528 P2d 1064 (1974), we held that an accident in which the claimant was injured approximately 80 miles from the employer's place of business, at 3 a.m., 14 hours after claimant had concluded his business purpose in making the trip, and after claimant had consumed a substantial amount of alcoholic liquor while talking to friends about a matter in which the claimant had been told the employer had no important interest, was not in the scope of employment.

We would summarize our holdings in the above cases as follows: In *Boyd* and *Fowers* the accidents were held compensable because the evidence established that each employe's work permitted him to be driving the automobile when and where he was driving it at the time of the fatal accident, and that the activity in which each was then engaged furthered the business of the employer.

Conversely, in both *Seidl* and *O'Connell* the accident was held noncompensable because the evidence showed that the employe's work did not require him to be driving or riding in the automobile at the time and place of the accident, and the activity in which he was engaged did not further the business of the employer.

[ 142 ]

From the foregoing it appears that Oregon falls in the category of those states which follow what one text writer terms "the course-of-employment approach." 1A Larson, Workmen's Compensation Law 6-59 to 6-60, § 34.21 (1973).

■ There is at least one important difference between the case at bar and all of the above: in the case at bar the evidence establishes that claimant was a 'traveling employe.' The general rule applicable to injuries sustained by traveling employes is stated by Larson in the following terms:

> "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." 1 Larson, Workmen's Compensation Law 5-172, § 25.00 (1972).

At the time of the fatal accident claimant was traveling as a passenger in a company vehicle, which was being driven by a fellow employe. Although claimant may have been intoxicated at the time of the accident, he was nevertheless technically engaged in company business at that time. The drinking at the airport cocktail lounge occurred at the conclusion of a plane flight in the employer's leased airplane and was in the company of fellow employes. This constituted a combined business and social interlude with and among fellow workers, was employment-related and would not change the essentially continuous business character of claimant's activities which led up to the accident. When they left the airport claimant and Rice were headed for Grants Pass where claimant was to spend the night in a motel prior to continuing his travel on company business the next day. When the collision occurred claimant must be deemed to have been traveling on company business as in *Boyd v. Francis Ford, Inc.,* and *Fowers v. SAIF,* both *supra.*

[ 143 ]

*Cf., Seidl v. Dick Niles, Inc., supra.* In our view the work connection in the case at bar is stronger than in either *Boyd* or *Fowers.* Unlike in *Seidl,* where claimant-decedent was in no way engaged in furthering the business of his employer at the time of the fatal accident, here the employe was at all times engaged in furthering the business of his employer.

For the above reasons and based upon the authorities cited, we conclude that the challenged claim is compensable. Former ORS 656.002(7)(a).[4]

Affirmed.

Foley, J., dissents.

---

[4]For a discussion of numerous cases from other jurisdictions generally reaching the same result, *see,* 1 Larson, Workmen's Compensation Law 5-175 et seq, § 25.21 (1972).