Argued October 25, 1978, resubmitted in banc
April 16, affirmed April 23, 1979.

HACKNEY, *Petitioner,*

*v.*

TILLAMOOK GROWERS COOP, *Respondent.*

(WCB No. 76-6792, CA 10879)

593 P2d 1195

John D. Ryan, Portland, argued the cause for petitioner. With him on the brief was Richard G. Helzer, Portland.

[655]

■■■■■■■■■■■■■■■■

Frank Moscato, Portland, argued the cause for respondent. With him on the brief were James M. Callahan, and Gearin, Landis & Aebi, Portland.

LEE, J.

■■■■■■

■■■■■■■■■■■

**LEE, J.**

Claimant appeals from a Workers' Compensation Board (Board) order denying benefits for an injury he sustained while arm wrestling with a fellow employee. We affirm.

Claimant was an assistant truck driver on a two-driver long-haul sleeper rig. Compensation was on a mileage basis and lodging expense was paid on lay-overs. Claimant's immediate superior was Peterson, the other driver. It was Peterson's responsibility to receive orders from the dispatcher and to make travel arrangements. Peterson and claimant delivered a load from Oregon to Jacksonville, Florida. After the truck was unloaded on a Friday, Peterson called the dispatcher and was instructed to spend the night in a motel in Jacksonville, which he and claimant did.

On Saturday morning Peterson again called the dispatcher. He was told that they should go to Columbia, South Carolina, a distance of approximately 365 miles, where they would pick up a load on Monday morning. Peterson told claimaint to prepare to leave the motel. Peterson then went to the motel office and returned, shortly after which they went to the motel restaurant for breakfast at about 10:30 a.m.

Around noon, Peterson decided they should go into the motel bar to drink beer and watch a football game. At approximately 5:30 p.m., Peterson challenged claimant to arm wrestle. Claimant refused several times but finally acquiesced. In the ensuing contest, claimant's arm was broken.[1] Claimant testified that by the time of the injury he had consumed "three or four" beers. The Board adopted the opinion of the referee, which stated:

"* * * The totality of claimant's testimony, his prior statement and his demeanor at the hearing do

---

[1] When claimant was seen by a physician at approximately 8:00 p.m. he told the doctor that he "fell out of the truck." The 801 form filed by claimant stated that the injury occurred while "[g]etting out of truck."

not lead me to the conclusion that claimant was forced into arm wrestling by his supervisor. Claimant has failed to meet his burden of proof to show by a preponderance of the evidence that he sustained an injury arising out of and during the course of his employment."

The sole issue is whether the "arm wrestling" arose in the course of claimant's employment as required by ORS 656.005(8)(a).[2]

In *Simons v. SWF Plywood Co.,* 26 Or App 137, 143, 552 P2d 268 (1976), we adopted the following from 1 Larson, Workmen's Compensation Law 5-172, § 25.00 (1972):

" 'Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, *except when a distinct departure on a personal errand is shown.* Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.' " (Emphasis supplied.)

Claimant contends that he is covered under the above general rule providing coverage during travel away from the employer's premises. The employer argues that the fact that Peterson and claimant remained in Jacksonville on Saturday instead of going directly to Columbia was such a departure from their employment that claimaint was within the "personal errand" exception to the general rule.

In *O'Connell v. SAIF,* 19 Or App 735, 738, 528 P2d 1064 (1974), claimant left on a business trip from St. Helens to Seaside, a distance of 80 miles. Claimant

---

[2] ORS 656.005(8)(a) provides:

"* * * * *

"(8)(a) A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, *arising out of and in the course of employment* requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means." (Emphasis supplied.)

took along a female companion and completed the business portion of the trip about noon. Claimant and his companion spent the remainder of the afternoon eating, shopping and strolling on the beach at Seaside. In the evening, claimant and his companion met friends for dinner, at which time a considerable amount of alcoholic beverage was consumed. While returning to St. Helens, claimant sustained personal injuries in an automobile accident which occurred shortly before 3:00 a.m. a few miles from Seaside. We held that the injury did not arise in the course of the claimant's employment and said:

> "* * * We have a situation here in which claimant's accident occurred after a nonbusiness delay of at least 14 hours, during which time claimant consumed a substantial amount of alcohol. The accident did not occur in the course of his employment [citations omitted]."

In the instant case, the claimant's injury arose after 5 1/2 hours of delay and the consumption of "three or four" beers. Claimant's decision to arm wrestle during the layover time had no business benefit to his employer. *See Seidl v. Dick Niles, Inc.,* 18 Or App 332, 337, 525 P2d 198, *rev den* (1974). We conclude that the injury did not occur while claimant was acting in the course and scope of his employment.

Affirmed.

**JOSEPH, J.,** dissenting.

The employer argues (and the majority agrees) that the fact that Peterson and claimant remained in Jacksonville on Saturday instead of going directly to Columbia establishes a distinct departure on a personal errand. The referee accepted that argument and apparently based his decision on it.[1] I do not agree.

---

[1] In his opinion the referee noted:

"In the within case, claimant's own testimony was that normally the drivers and the truck would lay over at the destination where the

Columbia is a one-day drive from Jacksonville. There was evidence that the custom was to go to the destination and do any necessary waiting there, but there was no evidence that Peterson was ordered to do so in this instance. Moreover, claimant's injury did not result from the decision to kill time in Jacksonville, rather than in Columbia. Furthermore, the evidence shows that Peterson was in charge, and claimant had no control over when the trip to South Carolina would be made.[2]

The question then is whether the activity of going to a bar with his superior, drinking beer, watching a ball game and arm wrestling—all at a time when claimant was required to be away from his employer's premises—was outside the scope of his employment. The nature of claimant's employment required him to kill time and, as a practical matter, to kill time with Peterson. The employer could not reasonably expect them to remain idle in a motel room during the whole waiting period. Drinking beer and watching a football game was not an unreasonable choice of recreation, and the fact that the injury arose from "horseplay" does not by itself preclude compensation. *Stark v. State*

truck was to be loaded. The truck had been dispatched to Columbia, South Carolina, 360 miles away. Upon completion of breakfast, there was no employment reason to remain in Jacksonville. Going to the bar for "one" beer, may not be such a deviation to take the drivers out of the course and scope of their employment. Remaining at the bar for an admitted minimum of 5 to 5-1/2 hours when the drivers had been dispatched to a destination 360 miles away presents a serious question of whether the bar activities were an incident to the employment."

[2] In response to the question whether Peterson directed claimant to go to the bar with him, claimant replied:

"Well, I had no better place to go, other than just sitting in the truck. He had the keys to the truck, and he was in charge, and I couldn't go anyplace without him, and I didn't know what his plans were, other than he said we were going to go to South Carolina; so I didn't have a motel room to go to, I had to go where he was."

*Industrial Acc. Com.,* 103 Or 80, 204 P 151 (1922).[3] I observe that tests of strength are a common form of recreation among men whose jobs involve physical labor. *See* cases noted in 1A Larson, Workmen's Compensation Law 5-158-161, § 23.65 (1978).

Larson suggests that in determining whether horseplay is within the course of employment, one significant factor is whether it necessitated the dropping of active work duties. He states that where the horseplay occurs during a forced lull in work activities, a more substantial deviation should be required to defeat compensation. 1A Larson 5-162, § 23.66 (1978). As noted above, from claimant's perspective the arm wrestling took place during a forced lull in work activities. That was not such a substantial deviation that it should be considered outside the course of his employment. I would hold the injury compensable.

SCHWAB, C.J., RICHARDSON, J., and BUTTLER, J., join in this dissent.

---

[3] In *Stark v. State Industrial Acc. Com.,* 103 Or 80, 100, 204 P 151 (1922), the court put it this way:

"It might be remarked parenthetically, that it is not to be supposed that a crew of men could be obtained unless some of them during working hours would play practical jokes on their fellow-workmen, especially if such men were red-blooded Americans."