Argued and submitted June 9, reversed December 8, 1982

In the Matter of the Compensation of
Michael Slaughter, Claimant.

SLAUGHTER,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(No. 80-1527, CA A23461)

654 P2d 1123

Robert Moon, Portland, argued the cause for petitioner. On the brief was John C. O'Brien, Jr., Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

The sole issue is whether claimant's injuries arose out of and in the course of employment, ORS 656.005(8)(a). Claimant, a traveling employe, was severely beaten in a tavern fight during a forced layover. The referee found the injuries compensable. The Workers' Compensation Board reversed, citing *Hackney v. Tillamook Growers Coop.,* 39 Or App 655, 593 P2d 1195, *rev den* 286 Or 449 (1979). We review *de novo,* ORS 656.298(6), and reverse and reinstate the referee's order.

Claimant is a long-haul truck driver who uses his employer's truck at his employer's direction. Claimant unloaded cargo in Las Vegas and later during the evening of May 24, 1979, arrived in Indio, California, to pick up a load of corn. He was directed to stay overnight and to telephone his employer in the morning for directions to the corn's location. Around 10 p.m., claimant refueled and parked his truck at a service station. With nothing to do until morning, claimant went to the Date Room Bar ten blocks away. Claimant is an Anglo-American; the tavern was patronized almost exclusively by Hispanic-Americans. Claimant had never been to the tavern before. It is unknown whether he ate at the tavern. He did drink. Just before 11:30 p.m., he went to the men's room. A fight ensued between claimant and three or four unidentified patrons, spilling out of the rest room, out the back door and into the parking lot. Claimant was left severely beaten. Police noticed alcohol on his breath. Although he was treated at a local hospital, no test of blood alcohol was ever made. Doctors found that he had multiple cuts, bruises and fractures of the jaw and skull. He underwent brain surgery to relieve pressure from a subdural hygroma. After more than a month in California hospitals, he was transferred as a mental patient to a Portland hospital. Later, for a time, he lived with his parents, while regaining the ability to care for himself.

There was no evidence that claimant initiated the fight. There was no evidence that he has been involved in any on - or off-the-job altercations in the past, and there is no evidence that he has a quarrelsome nature. His employer has not contended that he engaged in any wilful misconduct. In fact, while questioning the assumption, the Board

observed that "[a]ll parties seem to assume that claimant was the innocent victim of an unprovoked attack." Because of his severe head injuries, claimant is unable to recall any events of the night in Indio.[1] Assuming without deciding that initiating a fight might be a distinct departure on a personal errand,[2] in light of all the circumstances we find that, in any event, claimant did not initiate the fight.

The compensability of claimant's injuries depends on whether his presence in a tavern took him outside the scope of coverage for traveling employes. This court addressed the coverage for such employes in *Simons v. SWF Plywood Co.*, 26 Or App 137, 552 P2d 268 (1976). In that case, the claimant examined some equipment in Eugene at 5 p.m., flew to Medford where he spent the evening drinking with other company executives in an airport bar and intermittently discussed business until 11 p.m. He rode with his immediate superior in a car bound for Klamath Falls, where he was to stay in a motel and attend to business the next day. He was severely injured when the car collided with another car. We held that, because the claimant was a traveling employe and because the combined business and social interlude did not change the business character of his travels, the injury was work-related. We quoted language from Professor Larson that sketched the scope of coverage for traveling employes:

> "The general rule applicable to injuries sustained by traveling employes is stated by Larson in the following terms:
>
> > " 'Employes whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be *within the course of their employment continuously during the trip, except when a distinct departure on a personal errand* is shown. Thus, injuries arising out of the necessity of sleeping in hotels or

---

[1] During his recovery, claimant was often unable to recognize his employer, mother or father. His memory extends back only to a time several weeks after he had been moved to Portland.

[2] ORS 656.005(8)(a), which defines a "compensable injury," was amended in 1981 by the addition of the following language:

"* * * 'Compensable injury' does not include injury to any active participant in assaults or combats which are not connected to the job assignment and which amount to a deviation from customary duties." Or Laws 1981, ch 535, §30.

eating in restaurants away from home are usually held compensable.' 1 Larson, Workmen's Compensation law 5-172, § 25.00 (1972)." *Simons v. SWF Plywood Co., supra,* 26 Or App at 143. (Emphasis supplied.)

We faced the traveling employe issue again in *Hackney v. Tillamook Growers Coop,* 39 Or App 655, 593 P2d 1195 (1979). The claimant, who was an assistant driver, and the driver of the truck received orders from their dispatcher on Saturday morning to leave Florida and to pick up a load in South Carolina on Monday morning. The driver and the claimant delayed leaving and instead spent the afternoon in a motel bar. They drank beer and watched television. At about 5:30 p.m., the driver broke the claimant's arm in an arm wrestling match. The court held:

"In the instant case, the claimant's injury arose after 5 1/2 hours of delay and the consumption of 'three or four beers.' Claimant's decision to arm wrestle during the layover had no business benefit to his employer. * * * We conclude that the injury did not occur while claimant was acting in the course and scope of employment." *Hackney v. Tillamook Growers Coop, supra,* 39 Or App at 659.

The Board found the present case to be a "carbon copy" of *Hackney.* It expressed "some doubt [about] the correctness of the holding in *Hackney*" but felt constrained to deny this claim. *Hackney* is not controlling, because a "personal errand" was found there, in large part because of Hackney's delay in leaving Florida. *See Hackney v. Tillamook Growers Coop, supra,* 39 Or App at 658-59. The perceived disregard of the dispatch direction made the personal errand "distinct." In the case at hand, claimant did not disobey but rather followed instructions. He was passing time in Indio on a forced layover.

Claimant's presence in a liquor establishment does not *ipso facto* connote a "distinct departure on a personal errand." *Simons v. SWF Plywood Co., supra.* Our per curiam opinion in *Rogers v. SAIF,* 43 Or App 692, 603 P2d 783 (1979), which denied benefits with a citation to *Hackney,* was reversed on review, 289 Or 633, 616 P2d 485 (1980); the Supreme Court looked beyond the claimant's presence in the bar to find a work connection.[3]

---

[3] In *Rogers,* the claimant, who was a supervisor of a dredging project, suffered a fatal heart attack after spending most of the evening in a motel bar, engaging in

■ ■    In the instant case, a work connection was created
by claimant's status as a traveling employe. That is, travel-
ing employes are considered to be within the scope of
employment while away from home. *Simons v. SWF
Plywood Co., supra.* As the general rule in *Simons* implies:

> "The course of employment of a traveling worker is
> necessarily broader than that of an ordinary employe, and
> is to be liberally construed to effectuate the purposes of the
> Act." *Schreckengost v. Workmen's Comp. Appeal Bd.,* 43
> Pa Cmwlth Ct 587, 403 A2d 165, 167 (1979).[4]

The broader coverage is not, however, unlimited. Although
a traveling employe will remain covered while engaged in
some personal activities such as eating or sleeping, he will
not be covered while engaging in other personal activities
that are a "distinct departure on a personal errand."
*Simons v. SWF Plywood Co, supra.* Other jurisdictions have
explained the limits on coverage for traveling employes in
terms of reasonableness of the activity. One court states:

> "Where an employe, as part of his duties, is directed to
> remain in a particular place or locality until directed other-
> wise or for a specified length of time, 'the rule applied is
> simply that the employe is not expected to wait immobile,
> but may indulge in any *reasonable* activity at that place,
> and if he does so the risk inherent in such activity is an
> incident of his employment.'
>
> "* * * [T]he test as to whether specific activities are
> considered to be within the scope of employment or purely
> personal activities is the reasonableness of such activities.

---

horseplay, as well as fulfilling his duties as project superintendent to his men who
congregated there. Because the events of the evening were found to be a material
contributing cause of the heart attack, and because those events were work related,
the court held claimant's death compensable.

[4] The claimant in *Schreckengost* was a truck driver. He was told to go to Ohio
and return with a load of salt. When he arrived, the salt plant was closed. He
parked his truck at the plant and went with other drivers to dinner at a restaurant
and for beer at a bar. The claimant and the other drivers returned to their trucks
to sleep but left again to get snacks. They became lost on their way back. Claimant
was accosted by a man who demanded his wallet and then shot him. The court
found:

> "[The Claimant's] second excursion for refreshment during his evening at
> the salt plant was not so inconsistent with the purpose of his trip to Cleveland
> as to constitute an abandonment of his employment or such a deviation
> therefrom as should have caused us to conclude that he was no longer in the
> course of his employment." *Schreckengost v. Workmen's Comp. Appeal Bd.,
> supra,* 403 A2d at 167.

Such an employe may satisfy physical needs including relaxation." *Robards v. New York Div. Electric Products, Inc.,* 33 App Div 2d 1067, 307 NYS 2d 599, 600-01 (1970).

*See also Wright v. Industrial Cmsn.,* 62 Ill 2d 65, 338 NE2d 379 (1975); *Epp v. Midwestern Machinery Co.,* 296 Minn 231, 208 NW2d 87 (1973); *Cavalcante v. Lockheed Electroncis Co.,* 85 NJ Super 320, 204 A2d 621 (1964) *aff'd* 90 NJ Super 243, 217 A2d 140 (1966); *Schreckengost v. Workmen's Compensation Appeal Board, supra.*

■ We believe that the general rule of continuous coverage in *Simons* is best understood as a statement that injuries are compensable when resulting from activities reasonably related to the claimant's travel status. Not all activities would necessarily be covered. Clearly, some could be so unrelated to the employe's travels as to be excluded from the scope of coverage.

■ Here, claimant's forced layover as a traveling employe furnishes the work connection. Claimant's need to "kill time" arose out of the necessity of following orders to spend the night in Indio. His activity in passing time at a tavern during a forced layover was reasonable, and the claim is compensable.

Reversed; the referee's order is reinstated.