Argued and submitted May 13, 1985, reversed; referee's order reinstated February 12, reconsideration denied May 9, petition for review denied June 24, 1986 (301 Or 240)

In the Matter of the Compensation of
the Beneficiaries of Thomas W. McBroom,
(Deceased), Claimant.

The BENEFICIARIES OF THOMAS W. McBROOM,
(Deceased),
*Petitioner,*

*v.*

CHAMBER OF COMMERCE OF THE U.S. et al,
*Respondents.*

(81-07286; CA A32173)

713 P2d 1095

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

R. Kenney Roberts, Portland, argued the cause for respondents. With him on the brief were Jerald P. Keene and Roberts, Reinisch & Klor, P.C., Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant petitions for review of a Workers' Compensation Board order which reversed the referee and held that decedent's death is not compensable. *See* ORS 656.204. We hold that the decedent's death arose "out of and in the course of employment" and reverse. ORS 656.005(8)(a).

Decedent was a membership salesman for the United States Chamber of Commerce in Portland. On the morning of Saturday, May 9, 1981, he flew to Los Angeles to attend employer's annual conference at the Marriott Hotel for its western division representatives. Employer required decedent to attend the conference and paid his related expenses, including the cost of transportation and overnight lodging.

Decedent began drinking intoxicating liquor before his 8:15 a.m. flight to Los Angeles and continued drinking on the flight. Between 1 p.m. and 5 p.m. he attended a conference business session at which no drinks were served. Then he attended an employer-sponsored cocktail party and banquet. Employer paid for drinks served at the cocktail party and made drinks available for purchase at the banquet. At approximately 10 p.m., decedent left the banquet and went to his room.

Several witnesses testified as to decedent's condition at various points during the day and in the evening. Their accounts of his condition range from "reasonably normal" to "obviously inebriated." When decedent returned to his room at 10 p.m., he telephoned his wife in Portland. She testified that he sounded perfectly normal.

Decedent's activities for the next four hours are unknown. At about 2 a.m. on May 10, he asked hotel personnel where the whirlpool bath, or Jacuzzi, was. They told him that it was closed. At approximately 7 a.m., a fellow employe discovered decedent's body, clad in swimming trunks, floating face down in the Jacuzzi. A single pint bottle of vodka, one quarter full, was found in his room. Subsequent tests revealed that decedent's blood alcohol level at the time of his death was .40.

The referee concluded that decedent's activity at the time of death was related to his work and that his death was compensable. He held that decedent was

"a traveling employee required to be at the Los Angeles Marriott Hotel who was engaged in company business and or satisfying physical needs including relaxation just prior to his death. * * * As such, his death is compensable."

The Board reversed:

"[W]e do not believe that decedent's death can be said to have arisen out of the necessity of the decedent's stay away from home. * * * Nor do we think it can be said that consuming *such a quantity* of alcohol following conclusion of business and related social activities was a reasonable activity for the decedent to engage in, even considering the fact that he was traveling and away from home." (Emphasis in original.)

Petitioner has the burden of proving that decedent's death arose out of and in the course of his employment, that is, that the relationship between decedent's death and his employment is sufficient to allow compensation. *See Phil A. Livesley Co. v. Russ,* 296 Or 25, 28, 672 P2d 337 (1983); *Rogers v. SAIF,* 289 Or 633, 639-44, 616 P2d 485 (1980). Generally, "traveling employes are considered to be within the scope of employment while away from home," *Slaughter v. SAIF,* 60 Or App 610, 615, 654 P2d 1123 (1982), even if their voluntary intoxication leads to their injury. *See Simons v. SWF Plywood Co.,* 26 Or App 137, 552 P2d 268 (1976) (compensation allowed for intoxicated employe injured in accident when intoxicated fellow employe drove wrong way on Interstate 5); *Fowers v. SAIF,* 17 Or App 189, 521 P2d 363, *rev den* (1974) (compensation allowed for employe killed in automobile accident while driving with .18 blood alcohol level); *Boyd v. Francis Ford, Inc.,* 12 Or App 26, 504 P2d 1387 (1973) (compensation allowed for employe killed in automobile accident while driving with .37 blood alcohol level). If, however, the injury to a traveling employe occurs while he is engaged in "a distinct departure on a personal errand," the injury is not compensable. *Slaughter v. SAIF, supra,* 60 Or App at 615; *see Hackney v. Tillamook Growers,* 39 Or App 655, 593 P2d 1195, *rev den* 286 Or 449 (1979) (employe's broken arm sustained while arm-wrestling in a tavern not compensable where stopover was contrary to employer's explicit instructions).

Employer asserts that the claim is not compensable, because decedent's activities that led to his death were both personal and unreasonable. We disagree. The excessiveness of

defendant's alcohol consumption does not preclude our finding that his death was work related. *Boyd v. Francis Ford, Inc., supra.* That is particularly true here, where a significant portion of that consumption occurred during work related activities.[1] Neither does the Jacuzzi's being "closed" make decedent's activity so unreasonable and so unexpected as to prevent compensation.[2] After examining the totality of the circumstances we find that decedent was a "traveling employe" and that his presence at the weekend conference was directly connected with his employment. Accordingly, we hold that his death arose out of and in the course of his employment and not out of a distinct departure or personal errand.

Reversed; referee's order reinstated.

---

[1] On the basis of decedent's wife's testimony that he sounded perfectly normal on the telephone at 10 p.m., the Board found that decedent consumed almost all the alcohol found in his blood after that time. We find, however, that decedent had been drinking throughout the day and evening. Therefore, his blood alcohol content must already have been significantly elevated at 10 p.m.

[2] Thomas Ames, National Membership Sales Manager for the United States Chamber of Commerce, who conducted the 1981 conference, testified that he had met decedent in the same Jacuzzi at 2 a.m. at the conference in 1980. On the night decedent drowned, Ames went to the Jacuzzi at 2 a.m.:

"In fact I went to the Jacuzzi to see if there was any of my staff that I knew. Finding they were not [there], I decided to go to bed. That's exactly the same experience I had a year prior with [decedent]."