111 So.2d 270 (1959)
N. & L. AUTO PARTS COMPANY and Great American Indemnity Company, Petitioners,
v.
Raymond E. DOMAN and Florida Industrial Commission, Respondents.
No. A-283.
District Court of Appeal of Florida. First District.
January 29, 1959.
Rehearing Denied February 19, 1959.
Samuel Kassewitz, Jacksonville, for petitioners.
Martin Sack, Jacksonville, Burnis T. Coleman and Paul E. Speh, Tallahassee, for respondents.
*271 WIGGINTON, Judge.
An employer and its compensation insurance carrier have petitioned this court to review by certiorari a compensation order entered by the Florida Industrial Commission. The order in question affirmed a compensation order entered by the deputy commissioner which directed that the carrier pay compensation to the claimant for temporary total disability and pay medical bills as the progress of claimant's recovery required. The issue involved is whether the claimant was in the course of his employment at the time of his injury. This question must be resolved only upon a construction of the law relating to deviation.
The facts in the case are in conflict only in one minor respect. Claimant was employed by N. & L. Auto Parts Company of Jacksonville as a route salesman. His duties required him to travel into various communities of Georgia and South Carolina for the purpose of calling on customers of the company. On the day of his injury, accompanied by a fellow employee, claimant called on their last customer late in the afternoon. They ate their evening meal and drove to the outskirts of Savannah, Georgia, where they registered for the night at a motor court. After refreshing themselves and having no further duties to perform until the following morning, claimant and his companion called a taxi and drove into Savannah for the purpose of seeing a picture show. After the show, they ate a late snack and returned to the motor court. The only conflict in the evidence is whether claimant and his fellow employee had two bottles of beer at the time they ate their evening meal before registering at the motor court or after they left the picture show and before returning to the motor court for the night. This conflict is immaterial in view of the absence of any evidence to indicate that either claimant or his companion were intoxicated to any degree. After debarking from the taxicab at the office of the motel, claimant and his companion walked along the horseshoe shaped driveway in direction of the room which they would occupy for the night. Upon arriving at a point in the driveway directly in front of the door to their room, claimant left the driveway and started walking across the lawn. After three or four steps in the direction of the door to his room, claimant's ankle turned and he fell, breaking his leg. It is for the disability and medical expenses in connection with this injury that the award for compensation was made.
It is petitioners' position that since claimant's injury was suffered while on a personal mission exclusively for his private and personal enjoyment and not in any way connected with his employment, it cannot be held as a matter of law that the accident occurred and the injury was received while claimant was in the course of his employment. In support of this position petitioners rely upon the Foxworth case,[1] decided by the Supreme Court of Florida. The Foxworth case is not authority for the position taken by petitioners here. Recovery in the Foxworth case was denied upon the finding by the deputy commissioner that the injuries suffered by claimant were not the result of an accident or that, if in fact an accident had happened, claimant's injuries could not have resulted therefrom. The court cited as an additional reason why the deputy's order denying compensation should be affirmed was that on the facts in that case the deputy found that claimant was not in the course of his employment at the time he suffered the injuries for which he sought compensation.
The general rule is that an employee whose work entails travel away from the employer's premises is within the course of his employment at all times during the trip other than when there is a distinct departure for a non-essential *272 personal errand. Injuries incurred during such travel and while attending to the normal creature comforts and reasonably comprehended necessities, as distinguished from those incurred in the course of amusement ventures are usually held to be compensable. Compensation in such areas is predicated on the premise that these acts do not take the employee out of the scope of employment because they are necessary to his health and comfort; that although such acts are personal to the employee, nevertheless they are expected incidents of his away-from-home employment and indirectly if not directly benefit the employer; that such acts, therefore, are not in fact deviations from the course of employment.
It is undisputed that claimant was on an out of town business trip on behalf of his employer at the time of his injury. It must be conceded that it was necessary for him to secure lodging for the night. Had claimant not left the motor court after registering, but while walking over the lawn before retiring, fallen and broken his leg, such injury would be compensable under the Act, F.S.A. § 440.01 et seq. This assumes, of course, that claimant would not be guilty of such misconduct as would exclude him from its benefits.
The established rule in Florida is that when one is engaged in a purely private mission he is not within the scope of his employment until he returns to the employer's place of business or point of departure.[2] In the case now under consideration, claimant deviated from the course of his employment when he elected to drive into Savannah to see a picture show. Had he been injured while on this private mission, either in going into Savannah, or returning to the motor court, such injury would not have been compensable. Claimant's deviation, however, had been completed and came to an end when he debarked from the taxi on his return to the motor court. It was while walking across the lawn, a place where he had a right to be, subsequent to the deviation, and while properly in the course of his employment that the accident occurred which resulted in claimant's injury.
Our research fails to disclose any decision from this jurisdiction passing directly upon the question presented here, and the decisions from other jurisdictions in analogous cases are in hopeless conflict. Our Supreme Court has repeatedly held that the Workmen's Compensation Act is remedial legislation and should be liberally construed to effectuate the purpose of its enactment.[3] It would be hypercritical to hold that merely because claimant had deviated from the course of his employment on a completed private mission prior to the time of his injury he is barred from relief, whereas if he had not so deviated he would be entitled to the benefits of the Act. It would be equally unsound to conclude under the facts in this case that claimant's point of deviation occurred inside his motel room when he decided to drive to Savannah to see the picture show, and that he could not be considered to have returned to the course of his employment until he was again safely inside the door of his room. Such holdings would not be in keeping with either the spirit or intent of the Act.
For the foregoing reasons the deputy's finding that claimant was injured while acting in the course of his employment is supported by substantial evidence and should not be disturbed. The Full Commission was correct in holding as it did that claimant's private mission had been completed upon his return to the motor court, and that the order of the deputy should be affirmed. Certiorari is accordingly denied.
*273 CARROLL, DONALD K., J., concurs.
STURGIS, C.J., dissenting.
STURGIS, Chief Judge (dissenting).
The crux of the majority holding is that the point on earth where the injury occurs (the lawn of the motor court in this case) rather than the point of departure pursuant to the intention of one who embarks on an admittedly private mission is the criterion by which to determine whether the deviation from the course of employment had come to an end prior to the time the injury was sustained. This is a purist conception of matter over mind.
The uncontroverted testimony of the claimant is that after he and his fellow employee ate their evening meal and checked in at the motel for the night the following happened:
"So I went in and washed and cleaned up, got a paper, laid on the bed and read the paper. We wanted to see a movie that we would like to see; so we called a cab and went uptown to the movie."
And that after seeing the show they took a cab back to the motel where at around midnight:
"We got off at the office and there is a horseshoe driveway around the camp and we had Cabin No. 30, which was about the 18th cabin, and we passed around and got around to our cabin, and then I stepped off the driveway or street, or whatever you want to call it; it is the driveway that goes around the cabins, and I made about three or four steps on the lawn and there is where my ankle turned and broke my leg."
These statements speak more eloquently than any legal dissertation the fact that the deviation commenced as claimant departed from his room and that it had not ended when the accident occurred.
We were immediately confronted in this case with a procedural impasse due to the fact that the deputy's findings of law and fact are silent on the subjects (1) of deviation from the course of employment and (2) of injury by accident, which were the impediments to recovery insisted upon by petitioner.[1] His finding that the "claimant suffered an injury by accident arising out of and in the course of employment when he broke his leg" begs the proposition that there was at least a closely connected deviation from the course of employment. The Full Commission undertook to supply this void by recognizing the deviation, but affirmed the award, as does the majority of this court, on the theory that the deviation ceased when the employee reached the situs of the motel.
The conclusion that the deviation ceased when the employee alighted on the motel grounds contravenes the rule of our Supreme Court to the effect that the deviation ceases when the employee returns to the point of departure (see cases cited by footnote 2 of the majority opinion); this being subject to the qualification  not applicable on the facts in this case  that the deviation may be terminated at some other point by acts constituting a resumption of the duties of employment. The subject accident occurred while claimant was exclusively engaged upon his purely private mission. His uncontradicted testimony, supra, pinpoints that mission as having commenced precisely at the time he physically embarked upon it from his room in the motel, and that it was there that he reached the decision to engage upon it. One may search the record in vain for facts on which to use some other place as the terminal point of the deviation.
The rule announced by the majority arbitrarily adopts as the criterion for compensation *274 under the Workmen's Compensation Act the factor of where the injury occurs rather than its relation to the employer's business. It could be asserted with equal logic that deviation from the course of employment ended at the point where the claimant, in returning to his place of abode after his private sally "on the town" and indulgence in the proverbial "couple of beers", could first glimpse a view of his hostelry.
For the reasons stated, I respectfully dissent.
NOTES
[1] Foxworth v. Florida Industrial Commission, Fla. 1955, 86 So.2d 147.
[2] Duval Engineering & Contracting Co. v. Johnson, 154 Fla. 9, 16 So.2d 290; Bituminous Casualty Corp. v. Richardson, 148 Fla. 323, 4 So.2d 378; Fidelity & Casualty Co. of New York v. Moore, 143 Fla. 103, 196 So. 495.
[3] E.g.: DiGiorgio Fruit Corp. v. Pittman, Fla. 1950, 49 So.2d 600; Southern Bell Telephone & Telegraph Co. v. Pinkerman, Fla. 1950, 47 So.2d 547; McCall v. Motor Fuel Carriers, Inc., 155 Fla. 854, 22 So.2d 153.
[1] See Hardy v. City of Tarpon Springs, Fla., 81 So.2d 503, for a discussion of what the deputy's order must show in order to properly present the subject for appellate review.