**AETNA CASUALTY & SURETY COMPANY, Appellant,**

v.

**Andrew E. ORGON, Appellee.**

**No. 14702.**

Court of Appeals of Texas, Austin.

Dec. 3, 1986.

Rehearing Denied Jan. 7, 1987.

Ted Mishtal, Clark, Thomas, Winters & Newton, Austin, for appellant.

Tony Korioth, Austin, for appellee.

Before EARL W. SMITH,* GAMMAGE and ABOUSSIE, JJ.

EARL W. SMITH, Justice.

Aetna Casualty & Surety Company initiated this lawsuit, seeking to set aside a worker's compensation award made by the Industrial Accident Board to Andrew E. Orgon. After a bench trial, the trial court rendered judgment upholding the award. In two points of error, Aetna argues that the undisputed evidence shows that Orgon was not, as a matter of law, in the course of his employment at the time he was injured. Finding no merit in Aetna's argument, we will affirm the judgment of the trial court.

The only evidence at trial was Orgon's deposition, in which he related that at the times pertinent to this suit he was national sales manager for Texas Nuclear Corporation, an Austin-based manufacturer of electronic equipment for industry; that in that capacity he was responsible for market-forecasting and sales to the petroleum industry; that on the evening of Monday, October 31, 1983, he and Tony Hart, Texas Nuclear's regional sales manager, drove in a rented car from Austin to Bryan, where they were to attend a conference the next day at Texas A & M University; that the conference concerned the future of the petroleum industry; that his sole purpose in attending the conference was to gather information for his own market-forecasting relative to the petroleum industry; that shortly after their arrival in Bryan late on the evening of October 31, he and Hart checked into a Ramada Inn near the conference site; and that he awoke the next morning at 6:00 a.m., at which time he telephoned Hart in an adjacent room and told him, "Let's get moving." His testimony continued:

Q Now, after you called Tony that morning, what did you do next?
A Jumped right out of bed.
Q Okay.

A Turned the lights on and washed my face and brushed my teeth—started to brush my teeth.... I remember going over to the sink immediately, turning the lights on. If you've seen a Ramada Inn, the bed is here and they have like a little washroom here, and then they have the shower and the commode in a separate little room.
Q In other words, the sink is in a separate room than the shower and commode?
A It's outside the actual bathroom. So I was standing there turning the light on, and I started to get ready, washed my face, brushed my teeth, got ready to shave.
Q Are those the things you would normally do—
A Absolutely. As soon as I get up, I put water on my face to wake myself up and get moving.
Q So your routine, basically, was the same except that you got up a little later, maybe, than you usually do?
A Approximately the same time. Yeah, approximately the same time. I do remember—you know, *it's not the normal routine that I would have at home in terms of location and everything else, so it was strange to me in that fashion.*
Q Okay.
A So I went over and I started, I guess, with shaving.... And I remember I wanted a drink of water. I was thirsty, and I went for a drink of water and for some reason the glass slipped out of my hand.... For some reason I went for the glass, and for some strange reason I caught it. And what happened, I caught it going down and when you catch a glass, I caught it extra hard to hold it and my hands were wet because I was shaving, and it just shattered in my hand when I really had a grip on it. And I looked down at that point and I knew I'd cut it pretty bad.

.    .    .    .    .

Code Ann. 73.012 (Supp.1986) ]

* [Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't.

Q Was your routine—obviously you were in strange surroundings being in a motel—

A Right.

—but were you basically doing the things you would typically do in the morning, get up, wash your face, shave, brush your teeth, maybe get a glass of water?

A The things most civilized people do in the morning I was doing, brushing your teeth and shaving and getting ready to go to the office. That's correct.

Q I do all that in the morning, too, and I'm just trying to find out if you did anything different that morning?

A Well, I was—*outside of being in strange surroundings and probably being under a little more pressure to get moving faster because I was on the road and I didn't know if we'd find a place to go to breakfast in time to get to the conference and all that, I was probably moving quicker than I normally would be. You know, you're under some sort of time constraint when you're on the road. You're always wondering if you can get the right thing at the right time. It was not my normal routine at home, I can guarantee you that.*

Q Pardon?

A It was not my normal routine at home.

Q What about it was not normal?

A At home?

Q Yes, sir.

A My normal routine at home, the family gets up, the wife and I both get up at the same time, and things are a little more set in terms of what's transpiring.

Q Okay. I'm not sure I understand exactly what you mean by that.

A I know where I'm at when I wake up at home. I know my own room, I know where the light switches are, I know where the—you know, if I want a drink of water, I know where the drinking utensils are and so on and so forth. That's what is more at home.

Q Do you think that's the reason this happened, was because of an unfamiliarity with the surroundings or—

A I can't say that in all truthfulness. I think it's just a—it was a freak accident that happened, period.

*I do know it wouldn't have happened in my own home because we don't have glasses at the sink.*

Q *You don't have glass glasses?*

A *We don't have glass glasses in the bathroom. We never have because of the children. We have paper glasses.*

. . . . .

Q Was the company paying all your expenses for the trip?

A They always do, yes.

Q So they would have paid for breakfast and—

A Absolutely.

The Texas Worker's Compensation Act provides in pertinent part:

> The term "injury sustained in the course of employment" as used in the Act, . . .
>
> (4) . . . shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.

Tex.Rev.Civ.Stat.Ann. art. 8309, § 1 (1967). The Act must be liberally construed in favor of the employee; it must not be hedged about with strict construction, but must be given a liberal construction to carry out its evident purpose. *Yeldell v. Holiday Hills Retirement & Nursing Center,* 701 S.W.2d 243 (Tex.1985).

In his treatise on worker's compensation, Professor Larson has written:

> Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct depart[ure] on a personal

errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.

1A A. Larson, Workmen's Compensation Law § 25.00 (1985). *See also* E. Blair, Reference Guide to Workmen's Compensation § 9:19 (1974 & Supp.1986). Our research reveals this "continuous coverage principle" is the prevailing view throughout the United States. *See*, e.g., *Arkansas Dept. of Health v. Huntley*, 675 S.W.2d 845 (Ark. App.1984) (employee injured by unknown assailant while in hotel room on business trip); *Upchurch v. Industrial Com'n*, 703 P.2d 628 (Colo.App.1985) (truck driver injured during robbery while attempting to deliver goods); *Leonard v. Dennis*, 465 So.2d 538 (Fla.App.1985) (traveling employee injured in automobile accident on trip to restaurant); *Zurich Ins. Co. v. Zerfass*, 128 S.E.2d 75 (Ga.App.1962) (traveling executive injured en route to restaurant); *Olinger Const. Co. v. Mosbey*, 427 N.E.2d 910 (Ind.App.1981) (employee, living temporarily in motel near job site, injured by assailant); *Baldrige v. Inter-River Drainage Dist. of Mo.*, 645 S.W.2d 139 (Mo.App.1982) (employee killed in automobile accident while returning home after trip necessitated by duties of employment); *McGee v. Panhandle Tech. Systems, Inc.*, 387 N.W.2d 709 (Neb.1986) (employee injured in automobile accident while returning home from California where he had been studying marketing techniques); *Hobgood v. Anchor Motor Freight*, 316 S.E.2d 86 (N.C. App.1984) (truck driver shot in truck while off-duty); *Matter of Compensation of Slaughter*, 654 P.2d 1123 (Or.App.1982) (traveling employee severely beaten in tavern during forced layover); *Capizzi v. Southern Dist. Reporters, Inc.*, 61 N.Y.2d 50, 471 N.Y.S.2d 554, 459 N.E.2d 847 (1984) (traveling employee injured in bathtub fall in hotel); *Amalgamated Ass'n of Street, Elec. Ry. & M.C. Emp. v. Adler*, 340 F.2d 799 (D.C.Cir.1964) (traveling employee injured in bathtub fall in hotel); *see generally* 82 Am.Jur.2d *Workmen's Compensation* § 250 (1976 & Supp.1986). More important, several Texas cases have utilized this principle. *See Shelton v. Standard Ins. Co.*, 389 S.W.2d 290 (Tex.1965); *Walker v. Texas Employers Ins. Ass'n.*, 443 S.W.2d 429 (Tex.Civ.App.1969, writ ref'd); *Texas Employers Ins. Ass'n v. Cobb*, 118 S.W.2d 375 (Tex.Civ.App.1938, writ ref'd); *Hardware Mut. Cas. Co. v. McDonald*, 502 S.W.2d 602 (Tex.Civ.App.1973, writ ref'd n.r.e.); *Texas Employer's Ins. Ass'n v. Harbuck*, 73 S.W.2d 113 (Tex.Civ.App.1934, writ ref'd n.r.e.).

The merit of the continuous coverage principle is especially apparent from the facts of this cause. But for the business-related necessity of sleeping overnight in an out-of-town hotel room, Orgon would have awakened on the day in question in the comfort and security of familiar surroundings; he would have been unhurried; and he would have used a paper cup to get his usual drink of water.

We hold that, on the undisputed facts of this cause, Orgon was injured while in the course of employment as a matter of law. Aetna's two points of error are overruled, and the judgment of the trial court is affirmed.