Argued and submitted January 21, affirmed April 14, reconsideration denied
May 27, 1987

In the Matter of the Compensation of
Edward J. Reel, Claimant.

STATE ACCIDENT
INSURANCE FUND CORPORATION,
*Respondent on review,*

*v.*

REEL,
*Petitioner on review.*

(WCB 84-00293; CA A36984; SC S33331)

735 P2d 364

Ronald L. Bohy, of Rolf Olson, P.C., Salem, argued the cause and filed the petition for petitioner on review.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent on review.

JONES, J.

Gillette, J., filed a dissenting opinion in which Linde, J., joined.

## JONES, J.

The issue in this workers' compensation case is whether claimant was in the course of his employment at the time of his injury. The Court of Appeals denied claimant benefits for injury he sustained in an explosion in his own camper parked near the construction site where he worked. We affirm.

The Court of Appeals succinctly outlined the events leading up to claimant's injury:

> "Claimant was a dump truck driver for a paving contractor which had its principal place of business in McMinnville, Oregon. His permanent home is in Salem, but his job took him all over the state to various construction sites. At the time of the injury, he was working on a job in Cascade Locks, a distance of 89 miles from Salem. He had decided to drive his pickup and camper to the job site and live there for the duration of the job, four to eight weeks. The night before the injury, claimant discovered that he was out of coffee. He drove to the local store to buy some, but he found it closed. He parked his camper on the other side of the road and spent the night there. The following morning, while claimant was in his camper and was attempting to light a cigarette, fumes from the camper's defective propane tank caused an explosion, and he was badly burned." *SAIF v. Reel,* 81 Or App 258, 260, 724 P2d 914 (1986).

The following facts are undisputed: Claimant's employer, J.C. Compton Company, maintained a principal place of business located in McMinnville. Claimant, who resided in Salem, began working for J.C. Compton Company in 1979 as a dump truck operator and worked continuously for that employer until he was injured in the explosion in October 1983. The employment required employes to travel to remote parts of the state on paving jobs, and employes had short notice when a new job would begin or where it would be. The jobs lasted anywhere from two weeks to three months. The Cascade Locks paving job lasted three months. (The distance from Salem to McMinnville is 26 miles; from McMinnville to Cascade Locks is 99 miles.) Claimant had been on the Cascade Locks job for six weeks when he was injured. Some 41 persons were employed at this site. They were from Salem, Hermiston, Eagle Creek, Aumsville, Bend, Lake Oswego, Gardiner, Florence, Portland, Gresham, Sweet Home, Springfield, Canby,

Klamath Falls, Talent, McMinnville, Carlton, Dallas, Echo (all in Oregon), and Vancouver and Kennewick (both in Washington). Some of the workers commuted to the job from their homes. Others stayed in Cascade Locks in campers, in apartments, and in mobile homes. Some brought their families with them.

Claimant lived in his camper on or near the job site in Cascade Locks during the week but commuted to his home in Salem on weekends. Work schedules were posted daily and differed from one day to the next. Employes were often called on by the employer to report to work early or to work overtime to take advantage of weather conditions. They needed to be close by the job site in case of a suspension or resumption of operations due to a change in weather. Claimant was paid the required wage for federally funded projects, which was the prevailing union scale plus a zone pay differential dependent upon the distance of the job from the nearest union hall. He was not reimbursed for travel, subsistence or lodging, but was paid an additional $3.35 per hour for working in a zone more than 75 miles from Salem.

Although claimant was not working under a collective bargaining agreement, he was paid the extra hourly pay pursuant to the agreement "because of remoteness of area * * * there is a great inequity between living expenses of an employee providing for himself and his family in the major metropolitan areas and those of an employee working in remote areas within the large geographical area of this agreement." No travel time, transportation reimbursement or subsistence was paid to employes by the employer except when transporting equipment. Employes driving equipment away from their "home terminal" to a job site were paid the cost of lodging and meals.

The referee awarded compensation on the ground that claimant was a "traveling employe" and that the activities resulting in his injury reasonably related to his travel status, concluding:

> "In this case claimant may not have been required, as a condition of employment, to temporarily reside in the Cascade Locks area. However, claimant's hours of work varied, overtime was occasionally required and commuting would have involved a 180 mile drive each day. As a practical matter,

claimant's travel status was necessary and that status was due entirely to his employment. He was, therefore, a traveling employee.

"The remaining question is whether claimant's activities at the time of injury were reasonably related to his travel status or whether they represented such a distinct personal departure as to sever the employment relationship.

"Cases in all jurisdictions almost uniformly hold that injuries to traveling employees resulting from sleeping in hotels or motels are compensable. Additionally, a number of cases, including Oregon cases, have held that the mere consumption of alcoholic beverages does not constitute a distinct departure from employment. Here, claimant slept in his camper and, while preparing for work, attempted to light a cigarette. Certainly lighting a cigarette was not sufficient to sever claimant's employment relationship. Nor has any authority been cited or found to distinguish claimant's injury in a mobile 'room' which he owned and controlled from a room in a hotel, owned and controlled by a neutral party.

"I conclude that claimant was a traveling employee, that his activities at the time of injury were reasonably related to his employment necessitated travel status and that, as a result, his injury was sufficiently employment related to be compensable."

The Workers' Compensation Board affirmed, and the State Accident Insurance Fund petitioned for judicial review. The Court of Appeals reversed, finding that claimant was neither a "resident" nor a "traveling" employe and that he was injured "while engaging in a purely personal activity which bore no relationship to his employment." 81 Or App at 260-61.

To be compensable, an injury must arise out of and in the course of employment. ORS 656.005(8)(a). Claimant contends that he was a traveling employe and within the course of his employment at the time of the explosion. This court has never addressed whether the concept of a "traveling employe" should be utilized to interpret ORS 656.005(8)(a). However, the Court of Appeals adopted the concept in *Simons v. SWF Plywood Co.,* 26 Or App 137, 143, 552 P2d 268 (1976), deriving it from Professor Larson's work:

" 'Employees whose work entails travel away from the employer's premises are * * * within the course of their

employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.' 1 Larson, Workmen's Compensation Law 5-172, § 25.00 (1972)."

In this case, the Court of Appeals recognized that "[claimant's] job took him all over the state to various construction sites"; nevertheless, it concluded that claimant was not a "traveling employe" as that court has applied those terms in interpreting ORS 656.005(8)(a), because "[h]is travel brought him *to* and not away from his employer's job site." 81 Or App at 260-61 (emphasis in original). The Court of Appeals stated:

"We would treat claimant as a traveling employe if he were required by the nature of his work to travel 'away from the employer's premises.' 1A Larson, *supra,* at 5-525; *see Slaughter v. SAIF,* 60 Or App 610, 654 P2d 1123 (1982). He would be compensated for injuries arising out of the necessity of traveling, except if a distinct departure on a personal errand were shown. *Beneficiaries of McBroom v. Chamber of Commerce,* 77 Or App 700, 713 P2d 1095 (1986); *Simons v. SWF Plywood Co.,* 26 Or App 137, 552 P2d 268 (1976). His travel brought him *to* and not away from his employer's job site. We conclude that he was not a traveling employe in the sense that the term is used for workers' compensation purposes." 81 Or App at 260-61 (emphasis in original).[1]

We agree that this claimant's injury when he was burned in the explosion did *not* occur within the course of his employment.

Many cases hold that employes traveling on business of the employer and at the direction of the employer are covered by workers' compensation. *See, e.g., Rogers v. SAIF,* 289 Or 633, 616 P2d 485 (1980) (worker "on call" 24 hours a day at job site as a requirement of employment); *Slaughter v. SAIF,* 60 Or App 610, 654 P2d 1123 (1982) (long-haul truck driver on a layover); *Simons v. SWF Plywood Company, supra* (claimant traveling to various Oregon cities for business meetings

---

[1] We believe that the Court of Appeals has used "employer's premises" and "employer's job site" as being synonymous.

injured on the return trip). But here, even though J.C. Compton Company had its principal place of business in McMinnville, the claimant never worked at McMinnville. Only 2 of the 41 employes were from McMinnville. The employer maintained a business office in McMinnville, but the construction work was carried out by employes at job sites all over the state.

■　Workers' compensation should be awarded to a worker when the employe has been directed, as part of his duties, to remain at a particular place or locality until directed otherwise or for a specified length of time. The risk inherent in travel may arise out of the employment where such travel is a necessary incident of the employment. That is, when the travel is essentially part of the employment, the risk remains an incident to the employment even though the employe may not actually be working at the time of the injury.

■　The purpose of the workers' compensation law is to provide benefits for injuries caused by work-related hazards arising from the course of the employment. Under that rule, injuries sustained while driving to and from work normally are not covered, even though it is the work that subjects the worker to the hazard. *Nelson v. Douglas Fir Plywood Co.,* 260 Or 53, 488 P2d 795 (1971). On the other hand, where traveling employes are concerned, because the work sometimes subjects them to the hazards of fire in hotels or food poisoning in restaurants when the employer requires the worker to be traveling, the Court of Appeals has held those hazards covered. *See, e.g., Slaughter v. SAIF, supra; Simons v. SWF Plywood, supra.*

The real issue in this case is not whether this claimant was a traveling employe, but whether he was directed to live at or near the job site as an integral part of his employment. This is not a case where an employer sends a worker to a specific location to carry out the work of the employer. This is a difficult case because, for practical purposes, the employes who lived in remote areas of the state could not be available to carry out the employer's work unless they lived near the job site. Thus, although not directed by the employer to live at the job site, most of the workers necessarily had to do so to fulfill their employment obligations.

We believe that the problem is best resolved, not by reference to any "traveling employe rule," but by examining

the contractual relationship of the parties to determine if the claimant's injury "arose out of and in the course of" his employment. ORS 656.005(8)(a). The employes were paid a substantial differential for working in remote areas of the state. They agreed not to be reimbursed for lodging or meals while working in these remote areas unless they were driving company equipment. The working agreement was for them to be paid for five days per week only for hours spent at the job site. They were not paid regular salary for after-hours work. If they worked overtime, they were paid specially for overtime.

There is a line of related cases (the "bunkhouse cases") in which a worker is required to live on the premises in quarters provided by the employer. As to such employes, Larson states that this is the rule:

> "When an employee is required to live on the premises, either by his contract of employment or by the nature of the employment, and is continuously on call (whether or not actually on duty), the entire period of his presence on the premises pursuant to this requirement is deemed included in the course of employment. However, if the employee has fixed hours of work outside of which he is not on call, compensation is awarded usually only if the course of injury was a risk associated with the conditions under which claimant lived because of the requirement of remaining on the premises." 1A Larson, Workmen's Compensation Law 5-212, § 24.00 (1985).

As to such employes who are continually on call, but off the premises, off-premises injuries normally are not covered. 1A Larson, *supra,* at 5-225 to 5-229, § 24.23.

But when the worker has the option of living on or off the premises, Larson's rule is:

> "When residence on the premises is merely permitted, injuries resulting from such residence are not compensable under the broad doctrines built up around employees required to reside on the premises. This distinction has been applied when the source of injury was the burning of the bunkhouse, tent, or other residence furnished by the employer, a fall from a porch, a fall down stairs, injury going toward or coming from the residence, electrocution, collapse of the hut in a high wind, destruction of a trailer by a tornado, and various other hazards not directly associated with the employment. The theory is that when residence is mandatory, it is the constraints and obligations of the employment that subject the employee to

the risk that injured him, while if the residence is optional, the employee is free to do as he pleases and there is no continuity of employment obligation of any kind during the time the employee is voluntarily sleeping in a place provided for his convenience by the employer." 1A Larson, *supra,* at 5-244 to 5-248, § 24.40 (footnotes omitted).

Assuming without deciding that we would adopt the same or a similar rule were the case presented, the situation of the claimant at bar is more akin to the worker having the option to live on or off the premises than to the worker required to live on the premises. Here, the claimant, during off-duty hours, was free to do as he pleased, without respect to the employer's job site. The relationship between the injury and the employment is no greater than the risk of injury while going to or from work, a risk which, as stated above, is not covered.

■■ Although an employer cannot contract with an employe not to provide workers' compensation for injuries suffered in the course of employment, ORS 656.018(1)(c), the employment agreement of the parties can be utilized to interpret whether the worker is in the course of his employment. Under the employment agreement in this case, we conclude this worker was not in the course of his employment at the time of his injury, because:

(1) He made the decision to live in his camper at the job site. He was not directed to do so by his employer. He could have rented a house, a motel room, stayed with friends or endured a long commute from his home. The choice was his, not his employer's.

(2) He agreed to be paid an additional $3.35 per hour for working without other subsistence in an area remote from his home.

(3) The employer specially agreed to pay wages and subsistence if the worker was driving the employer's equipment to the job site, but not otherwise.

The Court of Appeals is affirmed, and the Workers' Compensation Board is reversed.

**GILLETTE, J.,** dissenting.

I dissent.

This longstanding, permanent employe worked at various locations around the state as the needs of his employer dictated. Some locations doubtless were sufficiently close to home to permit a reasonable commute. The job under consideration here was not such a job, however, and we ought to acknowledge it.

A job nearly 100 miles from home with varying and unpredictable hours is a job the employer *knows* to be one that will require the employe to find lodging near the job site. The fact that there is (or is not) a pay differential based on distance from a union hiring hall, that the employer pays (or does not) for certain travel but not all or that the employe received (or did not) a subsistence allowance does not settle the matter. The issue is whether the injury arose out of and in the course of his employment.

The majority does not draw a steady bead on this inquiry. It first says (303 Or at 216), "The real issue in this case is not whether this claimant was a traveling employe, but whether he was directed to live at or near the job site as an integral part of his employment." If that is the inquiry, then the state of facts to which I've already referred supplies the answer: The only fair inference from the geographic and other facts is that that is precisely what the employer "directed" (required of) him.

Unfortunately, the next sentence in the majority opinion begins to undo the focus: "This is not a case where an employer sends a worker to a specific location to carry out the work of the employer." 303 Or at 216. Again, with respect, that is not a correct summary of the facts, as the next two sentences of the majority opinion seem to recognize:

> "* * * This is a difficult case because, for practical purposes, the employes who lived in remote areas of the state could not be available to carry out the employer's work unless they lived near the job site. *Thus, although not directed by the employer to live at the job site, most of the workers necessarily had to do so to fulfill their employment obligations.*" 303 Or at 216 (emphasis supplied).

However massaged, these passages fail to let the majority out of its central dilemma. The majority must insist that there be a specific "direction" to the employe to reside at the job site in order to sustain its view. The majority cites no

case law, from this state or elsewhere, which has imposed so formalistic a requirement. To do so allows the employer, by its silence, to contract out of workers' compensation responsibility. This is not permissible in Oregon. ORS 656.018(1)(c). If an employer so arranges the circumstances of a job situation that it *in fact* requires a permanent employe to live at the site for the duration of the job, the employe has been "directed" — assuming that term has any significance in such an analysis — to do so.

Such case law as I have found from around the country supports this view. In *Olinger Const. Co. v. Mosbey,* 427 NE2d 910 (Ind App 1981), Mosbey, an employe of Olinger Construction, was assigned to work at a bridge and road construction site located 150 miles from his home. He lived in a motel while working on the project. One evening, a former employe of Olinger's entered Mosbey's motel room and stabbed Mosbey, who later died from the injuries. The Indiana court concluded that Mosbey's death was compensable under the traveling employe rule. The court rejected the employer's argument that Mosbey was not a traveling employe because his assignment was long term:

> "[E]ven if Mosbey had been assigned to the site for an extended time, we see no basis for making a distinction between employees, such as salesmen and truck drivers, who travel from city to city and those, such as Mosbey, who travel to one site and remain there until their specific assignment is completed.

> "The rationale behind the traveling employee rule is that an employee who is required to travel away from home is furthering the business of his employer as he eats, sleeps, and performs other acts necessary to his health and comfort during his travels. * * * This rationale applies equally to an employee who travels to a fixed location and stays there to do his job. This type of traveling employee is also away from home or headquarters because of his job, so that, in a sense, his activities, such as eating and sleeping in a distant location, are done for the benefit of the employer." *Olinger Const. Co. v. Mosbey, supra,* 427 NE2d at 915 (citation omitted).

*Brown v. Palmer Construction Company, Inc.,* 295 A2d 263 (Me 1972), involved two linemen who were assigned to work on a project in Brattleboro, Vermont. The job site was "beyond reasonable commuting distance" from the claimants'

homes in Maine. The employer expected the claimants to find lodgings near the Vermont job site and paid them additional compensation to cover their living expenses. The claimants worked regular hours and were not "on call" when off duty. The claimants shared an apartment with kitchen facilities and were injured when the oven of their gas stove exploded. The court concluded that the claimants' injuries were compensable under the traveling employe rule:

> "We think the policy of the Maine Act is to protect the employee against risks which are not purely self-created but are created by and incidental to the employment. In the instant case the necessity of lodging and meals in Brattleboro was not merely the necessity of the injured employees — it was a necessity of the employer in furtherance of the work it had contracted to perform in Vermont. These employees slept and ate where they did, not of their own choice or preference, not as a matter of personal comfort or convenience, but to accommodate the necessities of their employment. What they did was within the contemplation of the terms and conditions of that employment. The choice of an apartment with ordinary kitchen facilities, a choice the employees were free to make, did not add such unreasonable or excessive risks and perils as might cast doubt on the right to coverage. We conclude as did the Commissioner below that there is no rational difference between a traveling employee who moves from place to place and one who travels many miles to his employer's job location and can return home only on weekends or when the work is finally completed." *Brown v. Palmer Construction Company, supra,* 295 A2d at 266-67.

In *Leonard v. Dennis,* 465 So 2d 538 (Fla App 1985), the claimant worked as the supervisor of a construction project in Crystal River, Florida. He stayed in a Crystal River motel from Monday through Thursday and returned to his home in Tampa each weekend. The claimant was injured in an automobile accident while driving to a nearby restaurant with the project manager. The court held that, regardless of whether claimant and the project manager were going to dinner for business purposes, claimant was covered under the traveling employe doctrine.

In *Wright v. Industrial Comm'n,* 62 Ill 2d 65, 338 NE2d 379 (1975), Wright supervised the installation of industrial machinery in the purchasers' factories. His job frequently involved travel to out-of-state locations for five to six months

at a time. During a trip to Newburn, Tennessee, Wright was killed in a head-on car collision. The employer argued that "where an employee remains at a specific job location for 5 or 6 months, as in the present case, he becomes, in effect, a 'resident' of that location and can no longer be classified as a traveling employee." *Wright, supra,* 62 Ill 2d at 69. The court found that Wright was a traveling employe, concluding that:

> "We can find no rational basis to distinguish between the employee who is continuously traveling and one who travels to a distant job location only to return when the work is completed. While it is true that the latter type of employee may become more familiar with the risks inherent in his out-of-town employment because he remains in one locale, the risks are still present. It would be inconsistent to deprive an employee of benefits of workmen's compensation simply because he must travel to a specific location for a period of time to fulfill the terms of his employment and yet grant the benefits to another employee because he continuously travels." *Id.*

The unjust outcome of this case is not dictated by statute, prior case law or any identified public policy. Awarding benefits, as the referee and Workers' Compensation Board did, is appropriate.

I respectfully dissent.

Linde, J., joins in this dissent.