Patricia **BUCZYNSKI**, Petitioner,

v.

**INDUSTRIAL COMMISSION OF UTAH, Workers' Compensation Fund of Utah, and Utah State University, Respondents.**

No. 940544–CA.

Court of Appeals of Utah.

March 13, 1997.

James R. Hasenyager, Marquardt, Hasenyager & Custen, L.C., Ogden, for Petitioner.

Suzan Pixton, Salt Lake City, for Respondent Workers' Compensation Fund.

Alan L. Hennebold, General Counsel, Industrial Commission of Utah, Salt Lake City, for Respondent Industrial Commission.

Before BENCH, BILLINGS and ORME, JJ.

ORME, Judge:

Petitioner Patricia Buczynski seeks review of a final order of the Industrial Commission denying her workers' compensation benefits for injuries sustained in a slip-and-fall accident while exiting a hotel hot tub, ostensibly in the course and scope of her employment. We affirm.

## FACTS

At the time of her injury, petitioner was employed as an assistant professor of psychology at Utah State University in Logan, Utah. As part of her employment, petitioner was strongly encouraged, if not required, to present two scholarly papers annually, one of which was to be presented at a convention of the American Association for Counseling and Development on March 27–30, 1992, in Baltimore, Maryland. Her attendance at the convention was pre-approved by her department head, Professor Michael Bertoch, and her expenses incurred at the convention were reimbursed by her employer.

In accordance with the general plan to attend the Baltimore convention, petitioner and her companion flew on March 24, 1992, from Salt Lake City to Dulles International Airport, near Washington, D.C. Instead of driving to the Baltimore area, however, petitioner and her companion drove in the opposite direction to McGaheysville, Virginia, located some 150 miles from the convention site.

Upon arriving in McGaheysville, petitioner and her companion checked into a room at the Massanutten Hotel, which they had reserved some months earlier. One amenity offered by the hotel was a hot tub, which petitioner and her companion enjoyed on the evening of March 26. After relaxing in the hot tub, petitioner exited to change into her sweatpants. While walking in the direction of the changing room, petitioner stepped into a puddle of water, apparently caused by run-

off from the adjacent swimming pool, and fell, injuring her right knee. Emergency personnel were summoned to transport petitioner to the emergency room, where she was diagnosed as having knee strain and a "possible quadriceps tear."

The parties are in general agreement concerning the above facts. They agree petitioner arrived two and one-half days prior to the convention and stayed in McGaheysville during that time. It is also undisputed that petitioner did not submit for reimbursement any expenses obviously incurred while staying in McGaheysville.[1] The parties also do not dispute the occurrence of the slip and fall. However, the parties disagree as to the extent of petitioner's employment-related activities during the two and one-half days prior to the convention and the extent to which her itinerary was a product of her employer's policy, thus raising the issue of whether petitioner's accident arose "out of and in the course of" her employment with Utah State. *See* Utah Code Ann. § 35–1–45 (1994).

At the hearing before the Industrial Commission's administrative law judge, petitioner testified on direct examination that her early arrival and resulting stay in McGaheysville were for the primary purpose of providing her with extra time for some last-minute research at James Madison University, which is in Harrisonburg, Virginia, approximately fifteen miles from McGaheysville. Aside from doing extra preparatory research for her presentation in Baltimore, petitioner testified that she graded papers and submitted grades by fax, and also conducted telephone conversations with her teaching assistants to discuss materials for upcoming classes.

During cross-examination, petitioner acknowledged that she and her companion had lived together in McGaheysville for some two years prior to moving to Logan, Utah. Moreover, she acknowledged that she had worked for James Madison University as an assistant professor during that period, yet insisted that, during her two-and-one-half-day stay in McGaheysville, she did not participate in nonemployment-related activities such as sightseeing and visiting old friends, except for visiting one acquaintance.

Petitioner's companion corroborated to some degree the testimony of petitioner, but only insofar as she agreed that petitioner had performed a few job-related duties on the day of the accident, including sending faxes to Utah State and "working on grades." However, she also testified that she and petitioner had visited friends during the morning of March 26 and had visited a winery together either on March 25 or 26.

Professor Bertoch, head of the Psychology Department at Utah State, testified that he had approved and signed the final version of petitioner's travel authorization form prior to her departure. He testified that the form suggested nothing out of the ordinary, because faculty members often leave early on business trips to take advantage of lower airfares or for other reasons. He testified that the department has been rather flexible in this regard, so long as extra time away does not impinge upon the faculty member's class time. He admitted that the university encourages early departure where it will save airfare.

At the close of the evidence, the ALJ found that petitioner was in the course of employment from the time she departed Logan, Utah on March 24, 1992, to the time she arrived at Dulles International Airport, since the university had specifically required her attendance at the convention. The ALJ then found that petitioner was not in the course of her employment when she and her companion proceeded towards McGaheysville. The ALJ reasoned that petitioner's stay in McGaheysville, two and one-half days prior to the convention, constituted a substantial personal diversion from a work-related trip. Thus, the ALJ concluded that petitioner was not injured on March 26, 1992, by an accident arising out of and in the course of her em-

---

1. Petitioner did, however, submit an apparent meal receipt from an establishment identified as "Massanutten Athleats." This receipt, however, lacked any indication of the establishment's location, thereby failing to put petitioner's employer on notice of any travel to a venue other than Baltimore, Maryland.

ployment with Utah State.[2] The Industrial Commission subsequently affirmed the ALJ's decision denying petitioner compensation. This petition for judicial review followed.

## ISSUES ON APPEAL

Petitioner concedes there is no legal basis for disturbing the factual determinations adopted by the Commission. Petitioner therefore raises one specific issue on appeal: Whether, even given the facts as found by the Commission, the "continuous coverage" rule mandates compensation for her slip-and-fall injury in McGaheysville, Virginia. Stated another way, we must decide whether petitioner's injury arose out of and in the course of her employment.

## STANDARD OF REVIEW

█ We review the Commission's interpretation and application of the pivotal statutory provision, Utah Code Ann. § 35–1–45 (1994), for correctness. *E.g., Walls v. Industrial Comm'n,* 857 P.2d 964, 966–67 (Utah.Ct. App.1993); *Cross v. Board of Review,* 824 P.2d 1202, 1203–04 (Utah.Ct.App.1992).

## COMPENSABILITY IN GENERAL

█ To qualify for workers' compensation benefits in Utah, an employee must suffer an injury caused by an accident, *Allen v. Industrial Comm'n,* 729 P.2d 15, 18 (Utah 1986), and, in addition, prove two essential elements under Utah Code Ann. § 35–1–45 (1994), namely, (1) that the accident occurred "in the course of" the employment and (2) that the accident "arose out of" the employment. *Walls v. Industrial Comm'n,* 857 P.2d 964, 967 (Utah.Ct.App.1993). Both elements must be proven by a preponderance of the evidence. *See Lipman v. Industrial*

*Comm'n,* 592 P.2d 616, 618 (Utah 1979). In the instant case, it is undisputed that petitioner sustained an injury by accident. Thus, her injury is compensable if the two additional statutory elements are proven.

█ Under Utah law, an accident occurs "in the course of" employment when it "occurs while the employee is rendering service to his employer which he was hired to do or doing something incidental thereto, at the time when and the place where he was authorized to render such service." *M & K Corp. v. Industrial Comm'n,* 112 Utah 488, 493, 189 P.2d 132, 134 (1948).

█ An accident arises out of employment "when there is a 'causal relationship' between the injury and the employment." *Commercial Carriers v. Industrial Comm'n,* 888 P.2d 707, 712 (Utah.Ct.App.1994) (quoting *M & K Corp.,* 112 Utah at 493, 189 P.2d at 134), *cert. denied,* 899 P.2d 1231 (Utah 1995). " 'Arising out of,' " however, does not mean that the accident must be " 'caused by' " the employment; rather, the employment " 'is thought of more as a *condition* out of which the event arises than as the force producing the event in affirmative fashion.' " *Commercial Carriers,* 888 P.2d at 712 (quoting 1 Arthur Larson, *The Law of Workmen's Compensation* § 6.60, at 3–9 (1994)) (emphasis in quoted treatise).

## "CONTINUOUS COVERAGE" RULE

Petitioner's primary contention on appeal is that her slip-and-fall accident at the Massanutten Hotel satisfies both elements of Utah Code Ann. § 35–1–45 (1994) by virtue of the "continuous coverage" rule, also known as the "travelling employees" rule, *Gray v. Eastern Airlines, Inc.,* 475 So.2d 1288, 1289 (Fla.Dist.Ct.App.1985), and the "commercial

---

2. A significant reason underlying the ALJ's determination against petitioner was that petitioner's credibility had been brought into serious question prior to and throughout the hearing. The ALJ devoted more than four pages of his decision to petitioner's lack of credibility, noting several instances of petitioner's "symptom embellishment," as well as her tendency to provide misleading and incomplete information to medical providers in an effort "to manipulate them" for the purpose of bolstering her claim. He also found "compelling[] ... the testimony of three

of the applicant's neighbors that she is not a trustworthy individual and that she has a reputation in her immediate community of being dishonest in her dealings with others." Cross-examination elicited "instances which evidenced a substantial and reliable basis for their testimony.... On the other hand, no witnesses were called to rehabilitate the applicant's credibility." Therefore, the ALJ expressly credited the testimony of petitioner's companion and discredited petitioner's.

traveler" rule. *IBM Corp. v. Workers' Compensation Appeals Bd.*, 77 Cal.App.3d 279, 142 Cal.Rptr. 543, 544 (Ct.App.1978). Under such a rule, however denominated,

> [e]mployees whose work entails travel away from the employer's premises are held in the majority of jurisdiction[s] to be within the course of their employment continuously during the trip, except when a distinct depart[ure] on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually compensable.

1A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 25.00 (1996) (footnote omitted). Petitioner contends that the Industrial Commission erred in concluding that her accident did not fall within the "continuous coverage" rule and urges this court to do two things in response: (1) expressly adopt the "continuous coverage" rule, a position which the Commission does not oppose, and (2) overrule the Commission, concluding that the rule applies to the facts of the instant case, thereby making petitioner's injuries compensable.

■ For the reasons hereafter explained, we hold that the "continuous coverage" rule applies in Utah. First, the "continuous coverage" rule is the majority view among jurisdictions throughout the United States. *Id.; Aetna Cas. & Sur. Co. v. Orgon*, 721 S.W.2d 572, 575 (Tex.Ct.App.1986). *See, e.g., Montgomery v. Industrial Comm'n*, 173 Ariz. 106, 840 P.2d 282, 286 (1992) (traveling employee's Lyme disease, acquired when tick bit employee while employee was staying in hotel for two-week insurance training seminar, held compensable); *Arkansas Dep't of Health v. Huntley*, 12 Ark.App. 287, 675 S.W.2d 845, 848–49 (1984) (employee's injuries caused by assailant's attack while staying in motel for overnight business trip held compensable); *Wiseman v. Industrial Accident Comm'n*, 46 Cal.2d 570, 297 P.2d 649, 651 (1956) (traveling employee's death suffered in hotel fire held compensable even though employee in company of mistress); *Bedwell v. Brandywine Carpet Cleaners*, 684 A.2d 302, 306 (Del.Super.Ct.1996) (traveling employee's injuries incurred during lunch break held compensable); *Gray*, 475 So.2d at 1290 (flight attendant's injuries incurred while playing basketball game during scheduled layover held compensable); *Ridgway v. Combined Ins. Cos. of Am.*, 98 Idaho 410, 565 P.2d 1367, 1369 (1977) (reversing administrative determination that employee's injuries arising from car accident, which occurred while employee was away at employer-sponsored training seminar, were not compensable); *Blakeway v. Lefebure Corp.*, 393 So.2d 928, 930–31 (La.Ct.App.1981) (injury caused by employee's diving into shallow end of hotel swimming pool held compensable when employee was required by employer to stay in hotel for two-week seminar); *Appeal of Griffin*, 140 N.H. 650, 671 A.2d 541, 544 (1996) (reversing a finding that traveling employee's injury sustained in altercation with coworker in company car was not compensable); *Savin Corp. v. McBride*, 134 Or.App. 321, 894 P.2d 1261, 1263–64 (1995) (traveling employee's trip to bank while on business trip was not personal errand since it was necessitated by travel); *Roman v. Workmen's Compensation Appeal Bd.*, 150 Pa. Cmwlth. 628, 616 A.2d 128, 131 (1992) (traveling construction worker's injury sustained during lunch break a few miles away from construction site held compensable).[3]

---

**3.** In many cases in which compensability was denied, the general viability of the continuous coverage rule was nonetheless recognized. *See, e.g., Williams v. Atlanta Family Restaurants, Inc.*, 204 Ga.App. 343, 419 S.E.2d 328, 329 (1992) (traveling employee rule did not apply to employee raped after refusing ride back to hotel with her colleagues and remaining in bar to socialize); *Nock v. M & G Convoy, Inc.*, 204 Mich.App. 116, 514 N.W.2d 200, 201 (traveling employee's eye injury incurred while intervening in fight outside tavern held not compensable, given that major purpose of going to tavern was social and recreational, and lacked sufficient nexus to employment-related travel), *cert. denied*, 447 Mich. 1020, 527 N.W.2d 511 (1994); *Evans v. Consumer Programs, Inc.*, 849 S.W.2d 183, 188–89 (Mo.Ct.App. 1993) (traveling photographer's death suffered during side trip to Mt. Rushmore held not compensable); *Virginia Polytechnic Inst. & State Univ. v. Wood*, 5 Va.App. 72, 360 S.E.2d 376, 380 (1987) (graduate research assistant's injury sustained while bicycling to campsite some forty-two miles away from site of convention held not compensable).

The rationale for the rule was succinctly stated by the Oregon Supreme Court in *State Accident Insurance Fund Corp. v. Reel,* 303 Or. 210, 735 P.2d 364 (1987):

> [W]hen the travel is essentially part of the employment, the risk [of injury during activities necessitated by travel] remains *an incident* to the employment even though the employe[e] may not actually be working at the time of the injury.

*Id.* 735 P.2d at 367 (emphasis added). Thus, "only those injuries that are reasonably related or are incidental to the employer's business are compensable." *Bedwell,* 684 A.2d at 305. It necessarily follows that personal deviations from the employer's business "which break the causal connection" are beyond the scope of the "continuous coverage" rule. *Id.*

The second reason for our adoption of the "continuous coverage" rule is that the rationale underlying the rule is consistent with Utah case law in analogous situations. Particularly instructive is *Martinson v. W–M Insurance Agency, Inc.,* 606 P.2d 256 (Utah 1980). In *Martinson,* our Supreme Court held that injuries suffered by an employee in a car accident were not compensable, when the accident occurred while the employee was driving back from Park City to Salt Lake City after spending an evening of "socializing" with a customer and spending the night at the same customer's condominium. *Id.* at 257–58. Although business had been discussed between the two just prior to the employee's departure for Salt Lake, the Court noted that the personal attention to the business conducted in Park City was not necessarily required of the employee by his employer. *Id.* at 258.

The Supreme Court applied the "paramount or predominant motivation and purpose" test in affirming the Industrial Commission's denial of compensation. *Id.* at 258. This test involves a balancing analysis, wherein the social activities engaged in during a business-related trip are weighed against the business aspects of the trip. If the social pleasures or diversions are viewed as being merely incidental to the employer's business carried on during the trip, then the employee is deemed to be in the course of his employment. *Id.* at 258. Conversely, if the business aspect is merely "incidental or adjunctive" to the social activities carried on, then the employee should not be deemed to be in the course of his employment. *Id.* Because the evidence in *Martinson* showed that the business conducted by the employee in Park City was "incidental or adjunctive" to the social activities engaged in by the employee during the trip, compensation was not warranted. *Id.* at 258–59.

To a significant degree, the rationale behind the "continuous coverage" rule is consistent with the Court's holding and rationale in *Martinson.* As stated above, the *Martinson* court, in concluding that compensability was not warranted, focused on whether the business activities engaged in by the employee were merely "incidental and adjunctive" to the social pleasures undertaken by the employee. *Id.* at 258. Similarly, in cases applying the "continuous coverage" rule to injuries arising from recreational and social activities engaged in during business trips, courts have looked at whether the activities were reasonably incidental to or necessitated by the employment-related trip. *See Bedwell,* 684 A.2d at 305; *Gray,* 475 So.2d at 1290 n. 1; *N & L Auto Parts Co. v. Doman,* 111 So.2d 270, 272 (Fla.Dist.Ct.App.1959), *cert. denied,* 117 So.2d 410 (Fla.1960). In those cases, if the social and recreational activities constituted a distinct departure on a personal errand, then compensation was denied. *Bedwell,* 684 A.2d at 305; *Doman,* 111 So.2d at 272.

Having reviewed the case law from the jurisdictions following the "continuous coverage" rule and Utah's case law in analogous contexts, which is consistent with the rule's rationale, we are persuaded that the "continuous coverage" rule should be explicitly recognized in Utah. However, it does not follow that applying the rule to the facts of this case results in compensation for petitioner.

## APPLICABILITY OF THE RULE IN THIS CASE

■ The Commission concluded that the "continuous coverage" rule was not applicable, finding that petitioner's act of driving some 150 miles away from the site of the convention to pursue primarily personal ob-

jectives constituted a distinct departure from her employer's business, thus taking petitioner's accident out of the course of her employment. Whether the rule applies in this case turns on whether petitioner indeed made a distinct departure on a personal errand by driving to McGaheysville and checking into a hotel there two and one-half days before the Baltimore convention.

 It is well settled that the continuous coverage rule does not contemplate compensation for injuries sustained by an employee while on a personal diversion from the business of the employer. *See Bedwell v. Brandywine Carpet Cleaners,* 684 A.2d 302, 305 (Del.Super.Ct.1996); 1A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 25.00 (1996) (stating continuous coverage is available, "except when a distinct depart[ure] on a personal errand is shown").

> Employees who, within the time and space limits of their employment[,] engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

*Ford v. Bi–State Dev. Agency,* 677 S.W.2d 899, 902 (Mo.Ct.App.1984).

Whether an employee has made such a distinct departure from the employer's business so as to take an injury out of the "continuous coverage" rule was addressed in *Marbury v. Industrial Commission,* 62 Ohio App.3d 786, 577 N.E.2d 672 (1989). In *Marbury,* an employee of a community college traveled to Washington, D.C. to attend an employment-related conference. The employee's attendance at the conference was authorized by her employer and all expenses related to the conference were reimbursed by her employer. The six-day conference began each day at 9:00 a.m. and ended at 5:00 p.m. At 5:00 p.m. on one evening in the middle of the conference, the employee took a bus tour of Washington, D.C., which was offered to all conference participants at an additional cost. *Id.* 577 N.E.2d at 672. The

parties disputed whether this cost was reimbursed by the employer and whether the employee's supervisor encouraged the employee to participate. *Id.* The last stop of the bus tour was at a souvenir shop in Washington, D.C., and the tourists were allowed—but not required—to exit the bus and shop. *Id.* 577 N.E.2d at 673. Desiring to purchase a souvenir T-shirt for her daughter, the employee exited the bus and entered the store. While shopping, the employee slipped and fell, sustaining injuries. *Id.*

In denying her request for compensation, the Ohio Court of Appeals stated that the employee was within the course of her employment at the conference, as well as when she participated in the bus tour. *Id.* 577 N.E.2d at 674. However, as soon as she exited the bus to enter the souvenir shop to purchase the T-shirt for a family member with personal funds, "she was on a purely personal mission of her own, having nothing to do with her employer's purposes, and was therefore outside the course of her employment." *Id.*

A distinct departure was also at issue in *Yorkin v. Volvo Distributing Co.,* 143 N.J.Super. 474, 363 A.2d 908 (1976). In *Yorkin,* an employee attended a business-related convention in Miami Beach, Florida. Instead of returning home at the end of the convention, the employee remained in Florida, where he visited relatives and played in the ocean. The employee had been granted permission by his employer to remain the extra days but was not reimbursed for any expenses incurred during those days. While standing in the surf, the employee was injured after being struck in the head by a "belligerent pelican." *Id.* 363 A.2d at 908. In denying compensation benefits, the court simply stated that "a three day personal vacation tacked onto the end of the convention removes any injury occurring during that period from the course of the employment." *Id.* 363 A.2d at 908–09.

In *Virginia Polytechnic Institute & State University v. Wood,* 5 Va.App. 72, 360 S.E.2d 376 (1987), a graduate research assistant flew to Las Vegas to present a paper at a conference which was to begin on a Sunday and conclude on the following Saturday. The

employee's flight reservations were made by her employer, but were subsequently changed by the employee, without her employer's knowledge, so that she would arrive in Las Vegas two days before the conference began and depart three days after the conference ended. *Id.* 360 S.E.2d at 378. An avid bicyclist, the employee planned to bicycle from the Las Vegas airport to a campground located forty-two miles from the conference site, where she planned "to make final preparation in solitude for her presentation." *Id.* 360 S.E.2d at 377. While pedaling to the campground on her bicycle, the employee was struck and seriously injured by a hit-and-run driver. *Id.*

In denying the employee benefits, the Virginia Court of Appeals recognized the general rule that accidental injuries suffered by employees while traveling "to and from and incidental to attendance at" a work-related conference are within the course of employment. *Id.* 360 S.E.2d at 380. Finding the rule inapplicable to the facts in *Wood,* however, the court stated that at the time of her injury, the employee was neither traveling to nor engaged in activities "reasonably incidental to attendance" at the conference. *Id.* The court found that the employee had made a departure from her work-related travel to the conference once she mounted her bicycle and headed for the campsite. *Id.*

Turning again to our case, there is no question that petitioner qualifies as a traveling employee. She worked in Logan for Utah State University, and her employment required her to present at least two scholarly papers annually. This necessarily required her to travel. However, by departing for McGaheysville two and one-half days prior to the Baltimore convention, petitioner made a distinct departure similar to the departures found in *Marbury, Yorkin,* and *Wood.* At the hearing before the ALJ, two witnesses were questioned on this issue. The first witness was petitioner herself. She testified that during her stay in McGaheysville prior to the conference, she did further research for her presentation, graded papers, submitted grades by fax, and called her teaching assistants from the hotel to discuss materials for her upcoming classes. Petitioner stated that she engaged in these work-related activities during the day, and then engaged in relaxing activities during the evening. On cross-examination, she stated that she had only visited one acquaintance and had spent virtually her entire time working.

The second witness was petitioner's companion. Although the companion agreed that petitioner had performed some work-related duties while in McGaheysville, the companion also testified that they had spent the bulk of the day of the accident visiting friends, including a pottery craftsman who had made some stoneware for them. The companion also testified that the two of them had visited a local winery on either the day of or the day before the accident. The companion admitted to driving petitioner to James Madison University, but was not able to confirm whether petitioner in fact spent most of her time researching while on campus or whether she was mostly making social calls on old colleagues.

Additional evidence at the hearing revealed that petitioner's employer did not know of her intent to travel to McGaheysville prior to attending the Baltimore convention. In fact, the department head, Professor Bertoch, testified that, upon seeing petitioner's travel authorization indicating petitioner's early departure, he was under the impression that she was going to be seeking research grants in the nation's capital. According to Professor Bertoch, such activity would have met with his approval. Although petitioner testified in conclusory terms that her early departure benefitted her employer by way of financial savings on airfare, she did not explain how much savings was realized, how she calculated the savings, or how departing on a Tuesday rather than a Thursday would even result in a savings. And, as previously indicated, the ALJ specifically found petitioner not to be credible as a witness. The only other evidence bearing on the issue of airfare savings was Professor Bertoch's generalized testimony that the employer encouraged an early departure if it would result in a savings. While petitioner's appellate counsel tries to make much of this testimony, it simply does not support the proposition that the employer realized a savings in airfare

expense because petitioner departed on Tuesday rather than Thursday. The evidence also revealed that petitioner's hotel expenses incurred in McGaheysville were never submitted to her employer for reimbursement, indicating that petitioner intended her diversion to Virginia to be more personal than work-related.[4]

From this evidence, we can only conclude that the Commission properly determined that petitioner's side trip to McGaheysville constituted a distinct departure from the business of her employer. Petitioner's two-and-one-half-day diversion before the Baltimore convention is similar to the three-day vacation tacked onto the end of the business trip at issue in *Yorkin*, given the vacation-like activities engaged in by petitioner and her companion. While it is undisputed that petitioner engaged in some work-related activities while staying in McGaheysville, such activities were insignificant compared to the social and other personal activities she engaged in.

In support of her argument that the "continuous coverage" rule applies in the instant case, petitioner cites *Aetna Casualty & Surety Co. v. Orgon*, 721 S.W.2d 572 (Tex.Ct.App. 1986), and *Gray v. Eastern Airlines, Inc.*, 475 So.2d 1288 (Fla.Dist.Ct.App.1985). Although the employees in those cases were injured performing some activity or task while staying in a hotel, the cases are easily distinguished from the one before us.

In *Orgon*, a traveling employee, while away at a business conference, cut his hand on a glass that was broken during a failed attempt to get a drink of water in his hotel room. Despite the fact that getting a drink did not benefit his employer directly, the court found that the activity was, nevertheless, incidental to staying in the hotel to attend to his employer's business. 721 S.W.2d at 575.

In *Gray*, a flight attendant, during a scheduled layover, was injured while playing basketball at a YMCA near his hotel. In awarding benefits, the court compared the case to those cases involving activities engaged in by employees for their personal health and comfort while away from home on business. As stated by the court, such cases are premised on the fact that such activities are "expected incidents" of their employment away from home, and therefore are not deviations from the course of employment. 475 So.2d at 1290 n. 1 (quoting *N & L Auto Parts v. Doman*, 111 So.2d 270, 271 (Fla.Dist.Ct. App.1959), *cert. denied*, 117 So.2d 410 (Fla. 1960)).

*Orgon* and *Gray* would help petitioner only if the Commission had concluded she was in McGaheysville on her employer's business, and the question was whether a visit to the hot tub was an expected and incidental activity necessary for petitioner's personal health and comfort while attending to her employer's business while out-of-town. But this question is not even reached unless it is first established that the employee's stay in the hotel was necessitated by the employer's business. Such is not the case here. Unlike the employees in *Orgon* and *Gray*, where the employees' hotel stays were necessitated by their business travel, petitioner's stay in the Massanutten Hotel was a distinct departure from her business travel and attendance at the convention. In the words of the *Yorkin* court, it was a two-day "personal vacation tacked onto the [front] of the convention." 363 A.2d at 908. Thus, we need not address whether petitioner's specific act of soaking in the hotel's hot tub was within the realm of health and comfort activities reasonably to be expected of business travelers.

## CONCLUSION

As a general proposition, the "continuous coverage" rule applies in Utah. Nonetheless, the facts and circumstances of this case take petitioner's injury out of the scope of the rule because she was injured during a distinct

---

4. Although the "continuous coverage" rule does not hinge on whether travel and meal expenses were reimbursed by the employer, such reimbursement is a factor indicative of business trav-

el. *See, e.g., Tatum–Reese Dev. Corp. v. Industrial Comm'n*, 30 Colo.App. 149, 490 P.2d 94, 95 (1971); *Andrews v. Les Bois Masonry, Inc.*, 127 Idaho 65, 896 P.2d 973, 975–76 (1995).

departure from her employer's business while on a personal lark. Therefore, the Commission was correct in concluding that petitioner's accident did not arise out of and in the course of her employment with Utah State University. Accordingly, the Commission's order denying compensation is affirmed.

BENCH and BILLINGS, JJ., concur.